# Illinois Official Reports

## Appellate Court

---

### *Cook v. AAA Life Insurance Co.*, 2014 IL App (1st) 123700

---

| | |
|---|---|
| Appellate Court Caption | BRIANNAH COOK, a Minor, By and Through BRUCE COOK, Her Father and Next Friend, Plaintiff-Appellant, v. AAA LIFE INSURANCE COMPANY, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-12-3700 |
| Filed | June 9, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from defendant insurer's failure to promptly pay a claim on a policy insuring the life of plaintiff's mother when she drowned in a boating accident a few days after paying the delinquent premiums on the policy, the trial court's judgment finding that the insurer was only responsible for paying the face amount of the policy was affirmed and the denial of any statutory penalties or sanctions under Supreme Court Rule 137 was not an abuse of discretion in the absence of evidence that the insurer was guilty of intentional misrepresentation or bad faith. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05-CH-21326; the Hon. James R. Epstein and the Hon. Michael B. Hyman, Judges, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Barbara Revak, of Cook, Revak & Associates, Ltd., of Chicago, for appellant.

Creed T. Tucker, of Tucker Robin & Merker, LLC, of Chicago, for appellee.

Panel

JUSTICE DELORT delivered the judgment of the court, with opinion.
Justice Hoffman concurred in the judgment and opinion.
Justice Cunningham specially concurred, with opinion.

**OPINION**

¶ 1      An insured mother died in a tragic accident just a few days after she had fortuitously paid up the delinquent premiums on a life insurance policy payable to her three-year-old daughter. An innocuous mix-up at the insurance company over that last-minute payment precipitated an avalanche of litigation. Although the company offered to pay on the policy, the daughter's father and grandfather, both attorneys, refused the offer and demanded substantial penalties from the company over the brief payment delay. Along the way, the grandfather's law firm took one-third of the girl's insurance policy proceeds as a contingency fee. We agree with the two chancellors who heard the case below that the insurance company was only responsible to pay the face amount of the policy and therefore affirm.

¶ 2                           BACKGROUND

¶ 3      Briannah Cook, a minor, sued defendant AAA Life Insurance Company (AAA Life) through her father, Bruce Cook (Bruce). The suit concerned a life insurance policy issued for Briannah's benefit on the life of Bruce's late wife and Briannah's mother, Camille Cook (Camille). The complaint alleged four claims, including violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2000)) (counts I and IV), breach of contract (count II), and damages for vexatious and unreasonable delay in settling an insurance claim under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2000)) (count III). The court below granted summary judgment for AAA Life on counts I, II, and IV. AAA Life also prevailed after a bench trial on count III. The court also denied Bruce's motions to join additional parties and amend his complaint and for sanctions. Bruce has appealed virtually every substantive order rendered against him.

¶ 4      The facts adduced through summary judgment and at trial are essentially uncontested. In August 2002, Camille applied for a $200,000 life insurance policy from AAA Life, naming Briannah as the beneficiary. AAA Life accepted the application and issued the policy to Camille. In May 2005, AAA Life mailed Camille a reminder that she must pay $67.50 for three months of premiums, due on May 14, 2005. The notice stated:

- 2 -

"TO CONTINUE YOUR INSURANCE WITH ITS VALUABLE PROTECTION YOU MUST PAY THE AMOUNT DUE BEFORE THE END OF THE GRACE PERIOD WHICH EXPIRES JUNE 15, 2005."

Camille did not pay this premium before June 15, 2005. In July 2005, Camille sent a check for $135 to AAA Life, and the check was duly honored and paid by her credit union on July 19, 2005. Five days later, on July 24, Camille drowned in a boating accident.

¶ 5      On July 26, 2005, Bruce informed AAA Life of his wife's death. The AAA Life agent told Bruce that the policy had lapsed for nonpayment and no restorative payment had been made after the lapse date. It was not until making further investigation that Bruce discovered an entry for Camille's July 2005 payment in her check register.

¶ 6      On July 28, 2005, Juna Putvin, an AAA Life customer service representative, who was unaware of Camille's death, wrote Camille that because her "premium payment ha[d] not been received and the grace period ha[d] expired," her coverage was "now in lapse status as of May 14, 2005." Putvin's letter stated that AAA Life "would consider" reinstating the policy if Camille submitted a reinstatement application to AAA Life "for approval." The letter concluded with an admonition that "until reinstatement has been approved by our Underwriting Department your coverage will remain lapsed."

¶ 7      On August 30, 2005, Rufus Cook (Rufus), Bruce's father and an attorney, wrote to AAA Life making a claim on the policy and advising it that Bruce and Briannah were being represented by Rufus's law firm, Cook & Revak, Ltd. (the Cook firm). Rufus included a copy of Camille's final check to AAA Life showing the July 19, 2005, processing date.

¶ 8      On September 16, 2005, Brenda White, an AAA Life claims representative, responded to Rufus's letter, stating the policy had lapsed for nonpayment of premiums prior to Camille's death. She also stated that the reinstatement form was sent on July 28, 2005 and because Camille was already deceased at that time and therefore unable to complete the application, the policy "could not be reinstated and therefore remained lapsed," and the premium would be refunded. AAA Life mailed the refund to the Cook firm on September 21, 2005. On the same day, Brenda told Rufus that he would need to send a formal demand letter to her manager, Sherry Young, who would then forward the letter to AAA Life's legal department.

¶ 9      On September 23, 2005, Bruce signed a contingent fee agreement with the Cook firm on behalf of Briannah, agreeing to pay the firm (1) one-third of the policy proceeds from any settlement with AAA Life that occurred before filing a lawsuit, or (2) 40% of any settlement or judgment if it was necessary to file a lawsuit. On October 11, 2005, Rufus sent an unfiled class action complaint to Brenda along with the $135 AAA Life check. The letter demanded full payment of the policy and indicated that AAA Life might be liable for an additional 60% statutory penalty and other damages.

¶ 10      On October 21, 2005, Diane Coudurier, an assistant general counsel for AAA Life, sent an internal email to Brenda stating that there was no basis to deny coverage under the policy. She noted that the policy was "in force at the time of death," was "not contestable" and "would be payable without investigation" because the premium check cashed by AAA Life brought the coverage up to date and there was "no indication that the insured's health had changed." She asked for an immediate response "to keep the lawsuit from being filed."

¶ 11      Brenda then advised Diane to contact Sherry and Diane responded: "If Sherry approves I will send the claim form out with my letter to the attorney, since he is handling this matter for

the beneficiary." On the same day, Diane wrote a letter to Rufus advising him that AAA Life acted reasonably when it initially found that evidence of insurability was not met. However, upon full consideration of the relevant facts, including that the death was accidental, she had recommended that coverage be granted upon completion of an enclosed application.

¶ 12    That did not satisfy the Cook family, however. On November 3, 2005, Rufus responded to Diane's letter, acknowledging AAA Life's offer to pay the $200,000 policy proceeds, but demanding AAA Life resolve Bruce's claims for $485,000, including the face amount of the policy with prejudgment interest, the $60,000 "provided by statute for such cases" and $100,000 in "exemplary damages." The letter stated that AAA Life's representative had "falsely" stated that the policy had lapsed even though it had already cashed the premium check. It claimed that AAA Life's failure to disclose its knowledge that the premium was paid was "fraudulent as a matter of law." The letter rejected payment of the policy, noting that Briannah's net proceeds were now diminished because of the contingency fee. The letter went on to threaten AAA Life with an additional claim for violation of state consumer protection laws.

¶ 13    Because life insurance proceeds in such a large amount cannot be paid directly to a minor, AAA Life inquired about the existence of Briannah's minor's estate. Rufus sent a second letter to Brenda on November 3, admitting that he could not provide any conservatorship or guardianship papers for Briannah because no such documents existed. AAA Life explained that it would not pay Cook the policy proceeds unless a trust was established for Briannah's benefit. Rufus provided AAA Life with a declaration of trust executed by Bruce, but a few days later, he wrote to Diane expressing his dissatisfaction with her handling of the claim. After receiving no response, the Cook firm filed this lawsuit on December 12, 2005.

¶ 14    Bruce moved for a temporary restraining order against AAA Life, but the court suggested that a guardian should be appointed for Briannah through the probate court. A week later, Bruce filed a petition in probate court seeking to be appointed as the guardian of Briannah's estate. On that same day, the Cook firm sent AAA Life's counsel notice of an attorney's lien on 40% of the policy proceeds. On January 10, 2006, the probate court issued letters of office appointing Bruce as guardian of Briannah's estate.

¶ 15    On January 31, 2006, AAA Life filed a petition to adjudicate lien in the probate case. AAA Life sought to pay the $200,000 to Briannah's estate and requested that the court direct the estate to make any distributions. The probate court declined to adjudicate the attorney's lien, finding the matter was subject to jurisdiction of the chancery court. AAA Life then filed an interpleader counterclaim in this case seeking to deposit the policy proceeds with the court. On the same day, Bruce filed a citation to recover assets in the probate case. As part of the agreement resolving the citation, AAA Life tendered a $200,000 draft to Bruce in his capacity as the guardian of Briannah's estate.

¶ 16    The Cook firm then sought court approval of its contingency fee. The probate court appointed a guardian *ad litem* to determine the amount of attorney fees the Cook firm could take from Briannah's estate. On the recommendation of the guardian *ad litem*, the probate court entered an order awarding the Cook firm $66,666.66 in attorney fees. The parties then proceeded to litigate Bruce's complaint and AAA Life's affirmative defenses in the chancery case.

¶ 17    The summary judgment proceedings primarily examined whether the policy had lapsed at the time of Camille's death. Two different contracts were at issue: the group insurance certificate issued to Camille and the group term, life insurance policy. The certificate states that "[t]his certificate is a legal contract between the Certificateholder [Camille] and AAA Life Insurance Company." The certificate further provides, "This certificate, with a copy of the application and any attached riders form the entire contract." As to nonpayment of premiums, the certificate states:

> **Grace Period**
>
> We will allow a thirty-one (31) day grace period for all premiums due, except the first one. During this period the coverage will remain in force. If the premium due is not paid by the end of the grace period, the coverage provided by the Certificate will lapse. All insurance ends when the Certificate lapses. If Your death occurs during the grace period, We will deduct from the amount otherwise payable, that part of the unpaid premium which is applicable to the grace period.
>
> **Reinstatement of Insurance**
>
> If We terminate insurance for non-payment of premium, You may reinstate coverage within ninety (90) days following the last unpaid premium due date. You must pay all overdue premiums and provide Us with satisfactory Evidence of Insurability. The reinstated Certificate will not cover a loss which occurred during the lapse period."

The certificate defines "Evidence of Insurability" as "proof satisfactory to Us that an Insured is an acceptable risk under the Group Policy." The certificate defines "Group Policy" as the "Group Life Insurance Policy bearing the number LTL-97" and "issued to the Policyholder by Us." The certificate further provides that "[i]f there is a difference between the provisions of this Certificate and the Policy, the provisions of the Policy will govern."

¶ 18    The group policy is a contract between AAA Life and the American Automobile Association (the Association) which reads in part:

> **Entire Contract**
>
> This Policy, its appendices, endorsements, riders, and the application made by the Policyholders (a copy of which is attached), and the Certificate, applications made for insurance, riders and any endorsements, form the entire contract between the Company [AAA Life] and the Policyholder [the Association]."

The group policy also states:

> "AAA Life Insurance Company *** has issued this Policy in consideration of the Policyholder's [the Association] application and the payment of premiums, and agrees to pay the benefits as stated herein.
>
> This Policy issues to the Policyholder and any papers made a part of it, including the application for this Policy, and each application for Certificate of Insurance are part of this agreement."

The group policy allows AAA Life to issue certificates to eligible members of the Association:

> **Certificate of Group Insurance**
>
> We will provide an individual Certificate of Group Insurance (Certificate) for issue to each Insured whose application for insurance has been approved by Us. The

Certificate is a summary of the insurance under this Policy. The Certificate along with any attached riders, and a copy of the Insured's application for insurance under this policy for the entire contract.

* * *

If there is a difference between the provisions of this Policy and a Certificate, the provisions of this Policy will govern."

The grace period and reinstatement provisions in the group policy are virtually identical, except that the group policy does not require the insured to "provide [AAA Life] with satisfactory Evidence of Insurability" to reinstate the insurance after the grace period.

¶ 19     The evidence showed that premium payments mailed to AAA Life are sent to a post office box, where all the checks are automatically processed by a bank. The money then goes to one of two places. If the certificate or policy number, the due date, and the frequency of payment are all satisfactory, the payment is deposited in AAA Life's premium account. However, if there is an issue with the check or certificate, the bank places the funds into a suspense account. AAA Life then reviews its suspense reports to determine why funds were rejected into the suspense account. Here, because AAA Life believed that Camille's certificate had lapsed for nonpayment of premiums and required a new application, Camille's July 2005 payment was rejected and placed into the suspense account.

¶ 20     Judge Epstein denied Bruce's motion for summary judgment on counts I, II, and III of his complaint and granted AAA Life's cross-motion for summary judgment on counts I, II, and VI. He determined there were issues of genuine material fact as to count III, the sole remaining claim. Judge Hyman later denied AAA Life's own motion for summary judgment on count III and denied Bruce's motion to add parties and to amend the complaint. The matter proceeded to a bench trial before Judge Hyman on February 29, 2012.

¶ 21     After trial, Judge Hyman entered judgment in favor of AAA Life and against Bruce on count III, and denied Bruce's motion for sanctions. Later, he denied Bruce's additional posttrial motion for sanctions against AAA Life and its attorney. This appeal, which requests us to reverse virtually every decision made by the two trial judges, followed.

¶ 22                                    ANALYSIS
¶ 23                        Summary Judgment on Counts I and IV

¶ 24     The construction of an insurance policy and the determination of the parties' rights and obligations thereunder are questions of law appropriate for resolution by summary judgment. *Continental Casualty Co. v. Donald T. Bertucci, Ltd.*, 399 Ill. App. 3d 775, 776 (2010) (citing *Zurich Insurance Co. v. Raymark Industries, Inc*., 118 Ill. 2d 23, 58 (1987)). " 'Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Farmers Automobile Insurance Ass'n v. Danner*, 2012 IL App (4th) 110461, ¶ 30 (quoting *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 93 (2010)). We review the trial court's decision to grant or deny a motion for summary judgment *de novo. Id.* (citing *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 308 (2010)); see also *Joe Cotton Ford, Inc. v. Illinois Emcasco Insurance Co*., 389 Ill. App. 3d 718, 720 (2009) (finding

review of a grant of summary judgment in an action for declaratory judgment is reviewed *de novo*).

¶ 25    The purpose of summary judgment is to determine whether triable issues of fact exist and is proper where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, establish there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *O'Connell v. Turner Construction Co.*, 409 Ill. App. 3d 819, 822 (2011) (citing *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996)).

¶ 26    When reviewing a trial court's grant of summary judgment *de novo*, we are "limited to deciding whether the [trial] court correctly concluded that no genuine issue of material fact had been raised and, if none was raised, whether judgment as a matter of law was appropriate." *Chicago Transit Authority v. Clear Channel Outdoor, Inc.*, 366 Ill. App. 3d 315, 323 (2006) (citing *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 333 (2005)). An issue is "genuine" only if there is evidence to support the position of the nonmoving party. *N.W. v. Amalgamated Trust & Savings Bank*, 196 Ill. App. 3d 1066, 1075 (1990). To determine whether a genuine issue of material fact exists, we "must construe the evidence strictly against the movant and liberally in favor of the opponent." *Chicago Transit Authority*, 366 Ill. App. 3d at 323 (citing *William Blair & Co.*, 358 Ill. App. 3d at 333).

¶ 27    Bruce argues that the trial court's grant of summary judgment in favor of AAA Life on the Consumer Fraud Act counts I and IV was in error. He asserts the trial court incorrectly analyzed the procedure for reinstating Camille's coverage by characterizing the conflict between the policy and the certificate as a mere "disagreement," when the policy's more generous provisions clearly governed. Bruce explains that AAA Life had a duty to follow the policy's reinstatement requirements but misrepresented the requirements for reinstating coverage and denied coverage on that basis. He also argues that the two counts properly alleged that AAA Life knowingly misrepresented the terms of the policy, failed to implement procedures for prompt investigation and settlement of claims, and refused to pay the claim without conducting a reasonable investigation. Furthermore, Bruce contends that the trial court's reasoning for finding that these claims are preempted by section 155 of the Insurance Code was erroneous because recovery is permitted not only for deceptive conduct, but also for unfair conduct.

¶ 28    "[I]t is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy." *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312 (2000). Thus, "[a] breach of contract, without more, is insufficient to sustain a cause of action cognizable under the Consumer Fraud Act." *Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill. App. 3d 146, 159 (1998) (citing *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 459 (1995)). The Consumer Fraud Act prohibits, in the course of trade or commerce:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." 815 ILCS 505/2 (West 1992).

The elements of a cause of action under the Consumer Fraud Act include: "(1) a deceptive act or practice; (2) the intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of trade or commerce." *Zankle*, 311 Ill. App. 3d at 311-12.

¶ 29 Bruce did not establish a claim under the Consumer Fraud Act because he did not identify any "deceptive act." Camille's policy states: "If a premium due is not paid by the end of the grace period, the coverage provided by the Certificate will lapse." Camille's policy lapsed for nonpayment when she failed to pay her overdue premiums before June 15, 2005, the end of her grace period. The key issue is whether Camille's July 2005 payment effectuated reinstatement of her policy. The policy provides that the insured may reinstate coverage within 90 days following the last unpaid premium due date, but that the reinstated policy will not cover a loss which occurred during the lapse period. The certificate also allows reinstatement within 90 days but, in contrast to the policy, requires "Evidence of Insurability" before reinstatement becomes effective. The policy and certificate indicate that when there is a difference between the two, the policy controls.

¶ 30 Relying on the certificate, AAA Life initially determined that Camille's payment did not reinstate her policy because she did not provide evidence of her insurability. However, Bruce, relying on the policy, claimed that no such evidence was required to reinstate the policy. Here, the parties' disagreement about the procedure for reinstating Camille's coverage does not imply that AAA Life engaged in fraudulent or deceptive behavior, implicating the Consumer Fraud Act. Instead, we agree with the trial court that it constitutes a mere difference of opinion regarding contract interpretation insufficient to invoke the Consumer Fraud Act. There is no evidence in the record to suggest that AAA Life had a practice of lying to policyholders about the receipt of payments or that all of AAA Life's agents knew that Camille's payment had been received and processed at AAA Life's lockbox. We cannot deem AAA Life's statements as rising to the level of deceit or fraud.

¶ 31 Additionally, we agree that the Consumer Fraud Act claim is preempted by section 155 of the Insurance Code. "[A]n insurer's conduct may give rise to both a breach of contract action and a separate and independent tort action." *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 528 (1996) (citing *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 187 (1978)). Section 155 provides an extracontractual remedy when an insurer's misconduct is vexatious and unreasonable. *Id.* at 523. "A plaintiff may bring an independent tort action for insurer misconduct if the plaintiff alleges and proves the elements of the separate tort." *Young v. Allstate Insurance Co.*, 351 Ill. App. 3d 151, 169 (2004) (citing *Cramer*, 174 Ill. 2d at 528). "Mere allegations of bad faith or unreasonable and vexatious conduct, without more, however, do not constitute such a tort. Courts therefore should look beyond the legal theory asserted to the conduct forming the basis for the claim." *Cramer*, 174 Ill. 2d at 528. When the conduct is merely a breach of contract or conduct proscribed by section 155, a Consumer Fraud Act claim on that basis is preempted by section 155. *Young*, 351 Ill. App. 3d at 169 (holding that the plaintiffs' Consumer Fraud Act claim was preempted by section 155 because it was a claim for failure to pay insurance policy proceeds and "[b]ased on *Cramer*, a separate tort claim is not necessary and is inapplicable *** because a contractual remedy is available to plaintiffs").

¶ 32 While AAA Life initially denied coverage, it changed course shortly thereafter and appropriately paid the proceeds. AAA Life's conduct was neither inherently deceptive nor unfair. Accordingly, counts I and IV were preempted by section 155 of the Illinois Insurance

Code. See also *Evans v. International Village Apartments*, 165 Ill. App. 3d 1048, 1051 (1988) ("In Illinois, if the named plaintiff's personal cause fails, the entire class action must fail."). Because there was no genuine issue of material fact with regard to counts I and IV, the court correctly granted summary judgment to AAA Life on these counts.

¶ 33                        Motion to Join Additional Parties

¶ 34    Bruce argues that the trial court erred when it denied his motion to join two defendants, "American Automobile Association, Heathrow, FL" (the Association), and "Signet Trust Company, Trustee for AAA Group Insurance Trust, Washington D.C." (Signet). He moved to join these defendants about 14 months before trial, arguing they were necessary parties. Bruce asserts that he should be permitted to join these parties because they owed Camille a fiduciary duty as her agents. He claims they had a fiduciary duty not to allow "AAA [Life] to impose different and more stringent reinstatement terms than those set by the [p]olicy and then on that basis to deny her coverage." In other words, according to Bruce, they acted in concert with AAA Life to impose the certificate's reinstatement policy while ignoring the controlling policy provisions.

¶ 35    The Code of Civil Procedure provides that any person may be made a defendant who is alleged to have a claim or interest in the controversy or transaction out of which the controversy arose, or whom it is necessary to join for the complete determination of any question involved in the case, or against whom liability is asserted arising out of the same transaction. 735 ILCS 5/2-405(a) (West 2010). In assessing whether joinder is proper, a court considers whether the claims arise out of closely related transactions and whether there is in the case a significant question of law or fact that is common to the parties. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 199 (1995). "A reviewing court will not disturb a trial court's ruling on discovery matters unless there is a manifest abuse of discretion." *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 567 (2000) (citing *Schneiderman v. Kahalnik*, 200 Ill. App. 3d 629, 637 (1990)).

¶ 36    We agree with the trial court's decision to deny Bruce's motion to join the Association and Signet because Bruce presented no significant questions of law or fact that are common to the parties in this case. While Bruce contends there is an agency connection between these entities, he failed to produce any hard facts necessary to establish the existence of an agency relationship between the Association and/or Signet and Camille, nor any purpose such a relationship would have, but merely assumed that one existed. The policy designates the Association as the policyholder and does not designate it as AAA Life's agent. Instead, he merely claims that these additional defendants had some sort of duty to make sure that the policy's terms, and not those of the certificate, were controlling. We know of no such duty and cannot discern one from the policy documents. Accordingly, the trial court did not abuse its discretion in denying his motion. *Boyd*, 166 Ill. 2d at 199.

¶ 37                        Motion to Amend Complaint

¶ 38    Bruce asserts that the trial court erred by denying his motion to file a postsummary judgment amended complaint. Bruce sought to amend counts I though IV of the complaint, and also moved to add count V, alleging that AAA Life fraudulently misrepresented that the policy had lapsed and a new application was required for reinstatement. In another proposed claim,

count VI, he alleged a conspiracy to defraud against AAA Life and also sought to add the Association as a defendant. He based these proposed amendments on alleged newly-discovered evidence, including that he did not learn until 2010 after Sandra was deposed that AAA Life was continuing to apply the certificate's inapplicable reinstatement provision. By doing so, Bruce alleged that AAA Life continued to deny coverage to insureds who paid overdue premiums within the 90-day lapse period (the only requirement specific in the policy) but who passed away without having submitted a reinstatement application.

¶ 39    The Code of Civil Procedure states in relevant part: "Before or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." 735 ILCS 5/2-1005(g) (West 2010). In deciding whether a postsummary judgment amendment is proper, the following four factors are considered: (1) "whether the proposed amendment would cure the defective pleading," (2) "whether other parties would sustain prejudice or surprise by virtue of the proposed amendment," (3) "the timeliness of the proposed amendment," and (4) "whether plaintiff has had previous opportunities to amend the pleadings." *Lewis v. American Airlines, Inc.*, 287 Ill. App. 3d 957, 963 (1997) (citing *Loyola Academy v. S&S Roof Maintenance, Inc*., 146 Ill. 2d 263, 273 (1992)).

¶ 40    Section 2-1005(g) does not allow a plaintiff to amend a cause of action on which the defendant was granted summary judgment unless depositions and affidavits indicate that the plaintiff can replead the claim under another theory. *Steinberg v. Dunseth*, 276 Ill. App. 3d 1038, 1047 (1995). "As a rule, the circuit court's ruling to allow or deny an amendment is a matter of discretion and will not be reversed absent an abuse of discretion." *Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc*., 186 Ill. 2d 419, 432 (1999). A trial court abuses its discretion when it refuses to allow a plaintiff to amend his complaint when a cause of action can be stated if the amendment is permitted. *Moiseyev v. Rot's Building & Development, Inc.*, 369 Ill. App. 3d 338, 343 (2006).

¶ 41    The trial court did not abuse its discretion by denying Bruce's motion to amend his complaint. The proposed revisions of counts I through IV still rendered them almost identical to their predecessors. The court had already disposed of counts I, II, and IV through summary judgment in favor of AAA Life, and count III was set for trial. There is no indication whatsoever that repleading of these three counts would have removed the defects that resulted in their unfavorable disposition through summary judgment. As to Bruce's fraudulent misrepresentation claim, count V, he failed to establish detrimental reliance on any alleged misrepresentation. *Cramer*, 174 Ill. 2d at 529. The evidence indicates that Bruce did not rely on AAA Life's representations that the policy lapsed. Instead, Bruce immediately retained counsel and began aggressively litigating the reinstatement dispute surrounding Camille's policy.

¶ 42    The proposed conspiracy to defraud claim, count VI, alleges a number of unsupported legal conclusions, including that the Association was a trustee and fiduciary for the group policyholder's beneficiaries, the Association is an alter ego of AAA Life, and the Association has somehow supported AAA Life in violating the terms of the policy. The proposed count simply did not allege the elements of a conspiracy. *Karas v. Strevell*, 227 Ill. 2d 440, 466 (2008) (a "[c]ivil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means").

¶ 43    Bruce's motion to amend his complaint was also untimely, as he filed it on September 19, 2011, almost six years after he filed his original complaint on December 12, 2005. The addition of claims and parties at that late juncture would have required additional discovery and would have prejudiced AAA Life because the proposed claims depended on evidence different from that already gathered.

¶ 44    The case of *Grove v. Carle Foundation Hospital*, 364 Ill. App. 3d 412 (2006), is instructive on this point. There, the trial court denied a motion for leave to amend the complaint two years after the original complaint had been filed. In affirming the trial court, the appellate court held that the evidence supporting the amendment was not "inextricably intertwined" with the evidence supporting the alleged negligent acts already pled in the original complaint. 364 Ill. App. 3d at 418. The court noted that the focus is on whether the proposed amendment alters the nature and qualify of proof required for the defendant to defend the claim. Accordingly, we find that the trial court did not abuse its discretion in denying Bruce's motion to amend his complaint. *Cf. Pietka v. Chelco Corp.*, 107 Ill. App. 3d 544, 557 (1982) (an amendment was proper because it relied on "essentially the same" evidence as the other claims and could have been presented without delay).

¶ 45                        Bench Trial on the Vexatious Delay Claim

¶ 46    Bruce argues that the trial court erred in granting judgment in favor of AAA Life after trial on count III, because the evidence showed that AAA Life's delay in paying the insurance proceeds was vexatious and unreasonable as contemplated by section 155. Accordingly, Bruce not only asks us to reverse the order below, but also for $126,666 in statutory attorney fees and costs under section 155.

¶ 47    The sole issue at trial was whether AAA Life's settling of Bruce's claim violated section 155 of the Illinois Insurance Code. That section states, in relevant part:

> "In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such *action or delay is vexatious and unreasonable*, the court may allow as part of the taxable costs in the action reasonable attorney fees, [and] other costs ***." (Emphasis added.) 215 ILCS 5/155(1) (West 2012).

By enacting this law, our legislature sought to effectuate a balance between the "individual insured party's need for compensation and the broad societal interest in avoiding excessive damage awards that result in price increases to all policyholders." *Kush v. American States Insurance Co.*, 853 F.2d 1380, 1386 (7th Cir. 1988). In other words, its purpose is to punish insurance companies for vexatiously delaying or rejecting legitimate claims by holding insurers responsible for the "expense resulting from the insured's efforts to *prosecute* the *claim*," and discouraging them from using their "superior financial position by *delaying payment* of legitimate contractual obligations" to profit at the insured's expense. (Emphases in original and internal quotation marks omitted.) *Neiman v. Economy Preferred Insurance Co.*, 357 Ill. App. 3d 786, 797 (2005). Thus, "[t]he allowance of fees and penalties under [s]ection 155 is within the judgment and discretion of the trial court, and its determination thereon will not be disturbed on review absent an abuse of discretion." *Keller v. State Farm Insurance Co.*,

180 Ill. App. 3d 539, 554-55 (1989) (citing *National Tea Co. v. Commerce & Industry Insurance Co*., 119 Ill. App. 3d 195, 209 (1983)).

¶ 48    Whether a delay is vexatious and unreasonable is a question of fact that must be assessed based on the totality of the circumstances, taken in broad focus. *Keller*, 180 Ill. App. 3d at 555 (citing *Fassola v. Montgomery Ward Insurance Co*., 104 Ill. App. 3d 825, 832 (1982)). "Neither the length of time, the amount of money involved, nor any other single factor taken by itself is controlling in determining if a delay is vexatious or unreasonable." *Id*. (citing *Deverman v. Country Mutual Insurance Co*., 56 Ill. App. 3d 122, 124 (1977)). In examining the circumstances, courts have considered factors such as "the insurer's attitude, whether the insured was forced to file suit to recover, and whether the insured was deprived of the use of its property." *Mobil Oil Corp. v. Maryland Casualty Co*., 288 Ill. App. 3d 743, 752 (1997). Additional considerations include whether there is a *bona fide* dispute concerning coverage, the extent of the insurance company's evaluation and investigation of the claim, and the adequacy of communications between the insurance company and the insured. *Buais v. Safeway Insurance Co*., 275 Ill. App. 3d 587, 590-93 (1995).

¶ 49    In those circumstances "where a *bona fide* dispute concerning coverage exists, costs and sanctions are inappropriate." *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 380 (2001). "*Bona fide*" is defined as " '[r]eal, actual, genuine, and not feigned.' " *McGee v. State Farm Fire & Casualty Co*., 315 Ill. App. 3d 673, 683 (2000) (quoting Black's Law Dictionary 177 (6th ed. 1990)). If an insurance company's delay is grounded in a *bona fide* dispute over coverage, delay will not violate section 155, but that dispute must be rationally based in fact. *Id*. at 681. In other words, in order to state a claim under section 155, an "insured cannot merely allege that the insurer's conduct was vexatious and unreasonable, but she or he must include a modicum of factual support." *Id*. (citing *Bedoya v. Illinois Founders Insurance Co*., 293 Ill. App. 3d 668, 679 (1997)).

¶ 50    As is relevant here, "[g]roup insurance policies are those issued by insurance companies to a group policyholder, such as an employer, association or union." *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill. 2d 522, 527 (1975). A certificate is then issued to participating insureds. *Id*. The master policy is the primary contract under Illinois law and "must first be looked to in construing group insurance policies." *Id*. The *Hofeld* court explained:

> "Commonly, the certificates summarize the more important provisions of the policy terms as they apply to the insured. Often it is stated that the certificates do not constitute a part of the insurance contract. [Citation.] It may even be suggested by statute that only the master policy, the application of the employer and the individual applications shall constitute the entire contract. [Citation.] The individual insured normally sees only the certificate issued to him. If it contains provisions conflicting with those in the master policy, the certificate normally will be held to control. Courts have so held either under the theory that the certificates are a part of the total contract under the particular language of the certificate or on the theory of estoppel." *Id*.

¶ 51    "The trial judge, when sitting as the trier of fact in a bench trial, makes findings of fact and weighs all of the evidence in reaching a conclusion." *Staes & Scallan, P.C. v. Orlich*, 2012 IL App (1st) 112974, ¶ 35 (citing *Nokomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 483-84 (2002)). Thus, when a party challenges a trial court's bench-trial ruling, the appellate court will " 'defer to the trial court's factual findings unless they are contrary to the manifest weight of

the evidence.' " *Id*. (quoting *Nokomis Quarry Co*., 333 Ill. App. 3d at 484). Under this standard of review, we give great deference to the circuit court's credibility findings and we will not substitute our judgment for that of the circuit court " 'because the fact finder is in the best position to evaluate the conduct and demeanor of the witnesses.' " *Id*. (quoting *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 548 (2007)). Additionally, " '[a] factual finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence.' " *Id*. (quoting *Samour*, 224 Ill. 2d at 544). Therefore, we will not disturb the findings and judgment of the trier of fact " 'if there is any evidence in the record to support such findings.' " *Id*. (quoting *Brown v. Zimmerman*, 18 Ill. 2d 94, 102 (1959)).

¶ 52        As a threshold matter, our review of the record establishes that on October 21, 2005, Bruce knew that AAA Life offered to pay the policy proceeds in full. Here, Rufus specifically stated in his November 3, 2005 letter to AAA Life that "you [Diane] left [a message] on the afternoon of Friday October 21[st] advising that AAA [Life] would honor the policy." However, at trial, Rufus downplayed this critical evidence by characterizing it as "a little bit of hopeful whistling in the dark." The record supports the trial judge's finding that he was less than credible on this point. As the trial court explained in its detailed written decision:

> "It is not believable that an attorney of Rufus's caliber and experience would correspond with an insurance company in anything but the most direct, straightforward manner. When cross-examined on this point, Rufus dissembled, evaded answering defense counsel's questions, and failed to explain his November 3, 2005 admission. The only believable explanation is that Cook & Revak received AAA Life's offer of the $200,000 policy proceeds on October 21, 2005, and then counteroffered on November 3, 2005 for $485,000, which included in addition to the policy proceeds, $285,000 for attorney's fees and exemplary damages. [Bruce's] characterization of AAA Life's correspondence as only 'recommending' coverage, or reserving liability of payment are not believable in light of Rufus's admission in his November 3 letter and [Diane's] testimony."

¶ 53        Bruce's first contention that the automated lockbox deposit of Camille's premium check constituted an "unconditional acceptance" is without merit. Under the *Cullotta* test, AAA Life's acceptance of the check was conditional. Here, we must consider three factors to determine if AAA Life's acceptance of Camille's July 2005 check was conditional: (1) whether the insurance company issued a policy document; (2) whether the policy contained conditional language; and (3) whether the insurer processed "the check as though a cash premium had been paid." *Cullotta v. Kemper Corp*., 78 Ill. 2d 25, 31 (1979). Under this test, we first note that there is no evidence that AAA Life issued a policy document in response to Camille's payment. Next, AAA Life's certificate contains conditional language in the form of two conditions precedent to reinstatement: payment and evidence of insurability. Finally, AAA Life did not process Camille's check as though it were a cash premium. Instead, it held the funds in its suspense account and later tried to return the funds to Bruce. Therefore, on the basis of the *Cullotta* factors, AAA Life only conditionally accepted Camille's July 2005 check.

¶ 54        Additionally, the policy states that it is a contract between AAA Life and the Association. If there is a "difference" between the group policy and certificate, the policy states that the policy controls. The certificate conditions reinstatement on "Evidence of Insurability" and the

policy is silent on the issue. However, AAA Life does not view the policy's silence as a "difference" and therefore maintains its position that a new application was a condition precedent to reinstatement of coverage. The trial court found, and we agree, that AAA Life's interpretation of the policy and certificate was reasonable. In essence, AAA Life interprets a "difference" to be an express contradiction and, under this interpretation, the policy's silence on "Evidence of Insurability" does not contradict the certificate's terms. Thus, Diane's decision on October 21, 2005 to recommend coverage was a recommendation that AAA Life simply waive any condition precedent to reinstatement except payment. *LaSalle National Bank v. Metropolitan Life Insurance Co.*, 18 F.3d 1371, 1375 (7th Cir. 1994) (" '[c]onditions precedent may be waived when a party to a contract intentionally relinquishes a known right either expressly or by conduct indicating that strict compliance with the conditions is not required' "). Furthermore, Bruce's strained interpretation of the term "difference," which includes even the slightest departure between the policy and certificate is also unreasonable. Accordingly, we agree with the trial court that the difference between AAA Life's and Bruce's interpretations for the period July 26 to October 21, 2005 constituted a *bona fide* dispute over coverage. Therefore, because AAA Life did not unconditionally accept Camille's July 2005 check and because there was a *bona fide* dispute as to coverage before October 21, 2005, AAA Life's actions and delay in paying the policy proceeds were not vexatious and unreasonable.

¶ 55 Next, we agree with the trial court's analysis that AAA Life's actions were not improper for the period of October 21, 2005 to the end of March 2006. A review of the applicable timeline is instructive here. On November 3, 2005, the Cook firm wrote to AAA Life demanding $485,000, extra-contractual damages, and also threatened to institute a class action lawsuit. On the same day, the Cook firm incorrectly informed AAA Life that a guardianship for Briannah could not be established because her father, Bruce, was still alive. AAA Life wrote to the Cook law firm the next day explaining that "a legal account such as a trust" should be set up before the policy proceeds could be paid. A week later, the Cook firm sent AAA Life a declaration of trust, which set up a trust for Briannah with Bruce as the trustee. Diane reviewed the document, and decided that she needed to retain outside counsel to evaluate the trust. She was concerned that if the trust did not protect Briannah's interests then AAA Life could possibly be liable to her in the future.

¶ 56 On November 18, 2005, Diane informed the Cook firm of her decision to retain outside counsel. Our review of the record shows that the Cook firm had no interest in resolving the trust issue but instead was determined to litigate some sort of potentially lucrative class action suit. Therefore, the Cook firm's decision to file the complaint was made after AAA Life had agreed to pay the claim, which it was well aware of since it was working on the legalities of properly paying Briannah, who was a minor.

¶ 57 We agree with the trial court that AAA Life's delay to retain outside counsel was reasonable. Here, AAA Life sought to insulate itself from liability and attempted to get the probate court to adjudicate the amount of the Cook firm's fees. Illinois law establishes that any settlement on behalf of a minor child requires the court's approval. The trial court relied on an appellate court ruling in *Wreglesworth v. Arctco, Inc.*, 316 Ill. App. 3d 1023 (2000), stating:

> "Under Illinois law, a minor is a ward of the court when [s]he is involved in litigation, and the court has a duty and broad discretion to protect the minor's interests. [Citations.] That duty to protect is reflected in section 19-8 of the Probate Act of 1975

*** which requires that the court approve or reject any settlement agreement proposed on behalf of a minor. Thus neither a guardian nor a next friend can effectuate settlement of a minor's suit without court approval. [Citation.] Similarly, a parent has no legal right, by virtue of the parental relationship, to settle a minor's cause of action, and court review and approval of a settlement reached by a parent also is mandatory." (Internal quotation marks omitted.) *Id*. at 1026-27.

Rule 12.15 of the circuit court of Cook County also protects minors' interests in these situations. Compliance with both rules is required when there is a presuit settlement. Cook Co. Cir. Ct. R. 12.15(b)(i) (eff. Sept. 29, 2011); *Smith v. Smith*, 358 Ill. App. 3d 790, 793 (2005).

¶ 58    In other words, if AAA Life had made payment to Bruce after receiving the declaration of trust, it may have subjected itself to future liability. Similarly, if AAA Life had paid Briannah's estate $120,000 and paid the Cook firm $80,000 in attorney fees, it could have also subjected itself to liability. Accordingly, with regard to the October 21, 2005 to the end of March 2006 time period, Bruce failed to meet his burden that the delay in settling his claim was due to vexatious and unreasonable conduct on the part of AAA Life.

¶ 59    AAA Life erred when it sent out its July 28, 2005 letter to Camille representing that it had not received her July 2005 check. AAA Life impliedly acknowledged that error in its September 2005 letter when it sought to return Camille's premium payment. Thus, there is no evidence that the July 28, 2005 letter constituted anything other than a mistake. Illinois courts have held that that a mistake without more is not considered vexatious conduct. *Fassola v. Montgomery Ward Insurance Co*., 104 Ill. App. 3d 825, 832-33 (1982).

¶ 60    The trial court found that the "uncontradicted evidence showed that until 2008, [Diane] was not aware of [the] difference between the certificate's and the policy's reinstatement provisions." Here, the span of time was relatively short, AAA Life agreed to pay the policy proceeds before the lawsuit was filed. Thus, this allegedly wrongful conduct on the part of AAA Life did not warrant section 155 sanctions.

¶ 61                                Posttrial Motion for Sanctions

¶ 62    On appeal, Bruce argues that he is entitled to an award of sanctions under Supreme Court Rule 137. Here, he contends that based on the number of motions to compel discovery he filed, the late disclosure of the policy by AAA Life in 2008, and the numerous litigation delays caused by AAA Life, the trial court erred when it refused to award sanctions for AAA Life's vexatious conduct. Therefore, according to Bruce, AAA Life should be held accountable for knowing the terms of the policy and not disclosing them to him.

¶ 63    Rule 137 provides that every pleading or motion signed by the attorney of record constitutes a certificate by the attorney that he or she (1) read the pleading or motion, and (2) to the best of his or her knowledge, the pleading or motion is grounded in fact and warranted by existing law or a good faith argument for the extension of existing law. Ill. S. Ct. R. 137 (eff. July 1, 2013). The primary purpose of the rule is to discourage attorneys and parties from filing frivolous or false matters and asserting claims without any basis in law or fact, by penalizing those who engage in such wrongful conduct. *Baker v. Daniel S. Berger, Ltd*., 323 Ill. App. 3d 956, 963 (2001). " 'Courts should use an objective standard in determining what was reasonable under the circumstances as they existed at the time of filing.' [Citation.] However, to award sanctions for a needless increase in the cost of litigation, there must be subjective bad

faith." *Morgan Place of Chicago v. City of Chicago*, 2012 IL App (1st) 091240, ¶ 59 (citing *People v. Stefanski*, 377 Ill. App. 3d 548, 552 (2007)).

¶ 64 "The standard for evaluating a party's conduct under Rule 137 is one of reasonableness under the circumstances existing at the time of the filing." *Patton v. Lee*, 406 Ill. App. 3d 195, 202 (2010). Thus, "[i]f a reasonable inquiry into the facts to support the filing has not been made to ensure that the facts stated are well grounded, the party, the party's attorney, or both are subject to an appropriate sanction that may include an order to pay the other party's attorney fees and costs." *Id*. (citing *Chicago Title & Trust Co. v. Anderson*, 177 Ill. App. 3d 615, 621 (1988)). In other words, a court will only award those fees or costs that are caused by the improper filing. Ill. S. Ct. R. 137(a) (eff. July 1, 2013) (a sanction "may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing"). We review a trial court's denial of Rule 137 sanctions for an abuse of discretion. *CitiMortgage, Inc. v. Johnson*, 2013 IL App (2d) 120719, ¶ 19.

¶ 65 The trial court did not abuse its discretion by denying sanctions against AAA Life. The issue tried was whether AAA Life made any inaccurate representations in bad faith regarding the terms of the policy. Both the trial testimony and exhibits showed that Bruce as well as AAA Life assumed from the outset of the litigation that the terms of the certificate controlled. *Hofeld*, 59 Ill. 2d at 527 ("The individual insured normally sees only the certificate issued to him. If it contains provisions conflicting with those in the master policy, the certificate normally will be held to control."). Here, both parties assumed that the certificate language was identical to that of the policy. Bruce did not ask to see the policy until October 4, 2007, and he received a copy of the policy on March 3, 2008. AAA Life did not know that the policy differed from the certificate until October 21, 2008, when Bruce's attorney deposed Diane, AAA Life's general counsel. The trial testimony showed that AAA Life did not consult the policy on a regular basis, and instead referred to the certificate terms to determine coverage. The fact that both Bruce and AAA Life did not know about the policy and its terms establishes that there was no bad faith in AAA Life's pleadings and filings. Thus, the parties did not realize there was a difference between the language contained in the policy and the language contained in the certificate.

¶ 66 The trial court also noted that, at times, AAA Life represented in its pleadings that it was quoting the policy, when it was actually quoting the certificate. But here the trial court found AAA Life's affirmative statements were not intentional misrepresentations because it was not aware of any difference between the master policy and certificate until October 21, 2008. It noted:

> "AAA Life's position that there was no coverage under the certificate and group policy is grounded in fact and law. The group policy states that it is a contract between AAA Life and AAA. Where there is a 'difference' between the group policy and certificate, the group policy controls. The certificate conditions reinstatement on 'Evidence of Insurability' and the group policy does not. But AAA Life does not view the group policy's silence as a 'difference,' and therefore maintains its position that a new application was a condition precedent to reinstatement of coverage. This is a reasonable interpretation of the group policy and certificate."

¶ 67 Furthermore, in considering the balance of AAA Life's pleadings and responses, the trial court found no evidence of intentional misrepresentation or bad faith conduct on the part of

AAA Life regarding the contents of the policy or any other related issue. Accordingly, the trial court did not abuse its discretion in denying Bruce's motion for sanctions under Rule 137.

¶ 68                                    CONCLUSION

¶ 69        Accordingly, we affirm the judgments of the trial court.

¶ 70        Affirmed.

¶ 71        JUSTICE CUNNINGHAM, specially concurring.

¶ 72        I write separately because while I agree with the holding of the majority on a strictly legal basis, there are many things wrong with this case which leaves me with the feeling that justice was not served. For example, the trial court found that the plaintiffs were to blame for AAA Life's delay in payment. This finding is not supported by the record. The majority in this court does not make such a statement, but it seems to infer that AAA Life's action in denying payment for several months because of its own internal inefficiency was okay and the plaintiffs should just accept it. When one reads the record in totality, it is easy to see why and how the plaintiffs were outraged by the behavior and seeming indifference of AAA Life's staff. It is not a dramatic leap to understand why plaintiffs were pushed to a point of wanting to make AAA Life experience some consequences for its actions. So while I believe that the record does not provide the evidence to reverse the trial court, I take issue with the tone of the trial court's opinion and similarly with the tone of the opinion issued by the majority here. This case exemplifies the maxim: in the world of litigation, victory and justice are not synonymous.

¶ 73        There are two reasons for AAA Life's victory in the trial court and ultimately before this court. Neither of those reasons can reasonably be said to establish a moral or legal high ground for AAA Life. First, and most important, is that the plaintiffs could not prove the lack of a *bona fide* belief and dispute by AAA Life that it was not obligated to pay because the insurance policy had lapsed. In order to meet their proof on this point, the plaintiffs would have had to get the very employees of AAA Life who caused the problem to admit their actions, attitude and indifference. This was unlikely. Second, given the lack of proof on the first point, it necessarily follows that it would be impossible to prove that AAA Life's bad behavior rose to a level which justifies the imposition of sanctions by the trial court. I agree that the proper standard of review of the trial court's denial of sanctions in this case is abuse of discretion. The abuse of discretion standard is a steep hill to climb and while I may have reached a different conclusion than the trial judge, the record does not provide a basis for reversal. So, while the record does not support the plaintiffs' theory by a preponderance of the evidence, AAA Life's conduct in its handling this claim was inappropriate and deserves to be criticized.

¶ 74        The delay by AAA Life in recognizing that Camille had paid the premium and was therefore covered was occasioned by its own internal procedures. The procedures were confusing, less than transparent, and unfamiliar to its own staff. The plaintiffs had no control over that. Even after proof of premium payment by Camille was provided, AAA Life's staff continued to stonewall and refuse to meet its obligation to pay the claim. Weeks, then months passed before there was any hint that the claim would be paid. AAA Life's actions all took place in the context of a grieving family dealing with a profound loss. AAA Life's action must surely have added another level of anxiety to the family's grief.

- 17 -

¶ 75    I do not agree with the majority's statement that, while AAA Life initially denied coverage, it changed course "shortly thereafter and appropriately paid the proceeds." *Supra* ¶ 32. The majority goes on to say that the insurance company's conduct was neither inherently deceptive nor unfair. I agree that the plaintiffs did not *prove* inherent deception. However, I do not agree that the process was fair. On the contrary, the plaintiffs were subjected to seeming indifference and what subsequently turned out to be an admittedly erroneous denial of a legitimate claim. It is clear that the AAA Life employee who made the initial denial was unfamiliar with the company's procedures and did not bother to investigate. Further, it eventually required a memorandum from AAA Life's in-house counsel responding to the threat of a lawsuit by plaintiffs for the claim to be paid. Unlike the majority, I do not consider that "appropriate" behavior by AAA Life and cannot laud AAA Life for its handling of this claim.

¶ 76    The record is replete with instances of bureaucratic bungling and inexplicable delays by AAA Life's employees. One can only guess that they were inept; unfamiliar with company policies and procedures; insensitive to the plight of their insured's beneficiary; or intentionally protracting the process. Whatever the cause, it is clear that the plaintiffs had ample reason to be frustrated and angry and to believe that they had been wronged. Unfortunately, believing it and proving it in a courtroom are two different things. There is no indication that AAA Life would have paid the claim but for the memorandum from their in-house counsel, who acted under the threat of a lawsuit. Yet, that alone is not enough to establish the proof necessary to give the plaintiffs the relief they seek.

¶ 77    I find it interesting that the trial court and majority here seem to ascribe improper motives to the plaintiffs, in seeking to launch a class action lawsuit against AAA Life while seemingly giving the insurance company a pass on its role in precipitating the conflict in the first place. The majority's reasoning infers that all is well with AAA Life's behavior since the plaintiffs could not or did not prove that AAA Life's conduct was anything other than a mistake. It bears repeating that the mistake, if it was such, was occasioned by intractable indifference and unfamiliarity with their own company's policies and procedures by AAA Life's employees. The plaintiffs fought back in an appropriate way against a large insurance company which had turned a deaf ear to a legitimate claim. In my view, but for the plaintiffs' ability to fight back, the outcome of the request for payment of this legitimate claim was uncertain.

¶ 78    While the record does not support reversing the trial court's ruling as to count III of the plaintiffs' complaint or on the question of Rule 137 sanctions, I think AAA Life's conduct was high handed and inappropriate. Rather than the laudatory tone of the majority's opinion regarding AAA Life's conduct, which in my view gives incentive to such behavior, I would admonish AAA Life. It should be made aware that its behavior when viewed in totality, while not actionable, was unacceptable. It should be encouraged to train its staff regarding familiarity with company policies and procedures and sensitivity to its clients. In this case, the plaintiffs had the wherewithal to fight back so they eventually got the benefit to which they were entitled. I believe that their proposed class action lawsuit was aimed at shining light on AAA Life's practice of denying legitimate claims in similar cases. Under these facts, I cannot take issue with that proposition. Accordingly, as a matter of public policy, AAA Life should be sent a strong message that although it prevailed on the legal claim based on these specific facts, its behavior does not deserve accolades.