# Illinois Official Reports

## Appellate Court

---

*Midwest Medical Records Ass'n v. Brown*, 2018 IL App (1st) 163230

---

| | |
|---|---|
| Appellate Court Caption | MIDWEST MEDICAL RECORDS ASSOCIATION, INC.; RENX GROUP, LLC, f/k/a Big Blue Capital Partners, LLC; and TOMICA PREMOVIC, Individually, and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants, v. DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois; MARIA PAPPAS, Treasurer of Cook County, Illinois; and COOK COUNTY, ILLINOIS, a Body Politic and Corporate, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-16-3230 |
| Filed | February 1, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 15-CH-16986, 15-CH-18832, 16-CH-193; the Hon. Sophia H. Hall, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and remanded. |
| Counsel on Appeal | Myron M. Cherry & Associates, LLC (Myron M. Cherry and Jacie C. Zolna, of counsel), Zimmerman Law Offices, P.C. (Thomas A. Zimmerman Jr., of counsel), Larry D. Drury, Ltd. (Larry D. Drury, of counsel), and John H. Alexander & Associates, P.C. (John H. Alexander, of counsel), all of Chicago, for appellants. |

Kimberly M. Foxx, State's Attorney, of Chicago (Chaka M. Patterson, Paul. A Castiglione, and James S. Beligratis, Assistant State's Attorneys, of counsel), for appellees.

Panel          JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.


## OPINION

¶ 1      Plaintiffs, Midwest Medical Records Association, Inc.; Renx Group, LLC; and Tomica Premovic, appeal following the circuit court's dismissal of their consolidated class action complaint challenging the practice of defendant, Dorothy Brown, Clerk of the Circuit Court of Cook County (Clerk), charging a fee for filing a petition or motion to reconsider, vacate, or modify interlocutory judgments or orders in the circuit court. In granting defendants' motion to dismiss the complaint under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)), the circuit court held that plaintiffs' claims were barred by the voluntary payment doctrine and that no private right of action existed under section 27.2a(g) of the Clerks of Courts Act (or Act) (705 ILCS 105/1 *et seq.* (West 2014)).

¶ 2                           I. BACKGROUND

¶ 3      Section 27.2a(g) of the Clerks of Courts Act imposes a fee for filing a petition to vacate or modify "any final judgment or order of court." 705 ILCS 105/27.2a(g) (West 2014). Under this section, plaintiffs were each charged a $60 filing fee for filing motions to reconsider interlocutory orders in their separate underlying cases pending in the circuit court of Cook County. Plaintiffs paid these fees but not under protest. Plaintiffs then individually instituted lawsuits against defendants.[1] The lawsuits were subsequently all transferred as related to the same docket.

¶ 4      Plaintiffs filed a consolidated amended class action complaint against defendants on May 5, 2016, for equitable and monetary relief. Plaintiffs alleged that they brought suit on behalf of themselves and all others similarly situated who paid a fee for filing a motion to reconsider an interlocutory order in the circuit court of Cook County under section 27.2a(g)(1) and (2) of the Act from November 19, 2010, to the present. Plaintiffs asserted that the filing fee was unauthorized under section 27.2a(g), but they paid the fees involuntarily and under duress because they would have been denied their constitutional right to challenge the interlocutory orders and suffered detrimental consequences and adverse judgments against them if they had not paid the fees.

---

[1]Midwest Medical Records Ass'n, Inc. v. Brown, No. 15 CH 16986 (Cir. Ct. Cook County) (motion to reconsider interlocutory order); Renx Group, LLC v. Brown, No. 15 CH 18832 (Cir. Ct. Cook County) (motion to vacate default judgment); Premovic v. Brown, No. 16 CH 193 (Cir. Ct. Cook County) (motion to vacate or modify an interlocutory order).

¶ 5    In count I, plaintiffs sought a declaratory judgment that the practice of collecting the filing fee for motions or petitions to reconsider, vacate, or modify interlocutory orders was unlawful under section 27.2a(g), and requested equitable and monetary relief and reasonable attorney fees and expenses. Count II alleged that plaintiffs had an implied private cause of action under the Clerks of Courts Act based on the Clerk's violation of section 27.2a(g), and requested equitable and monetary relief, restitution of the unlawful fees they paid, and reasonable attorney fees and expenses. Count III alleged unjust enrichment based on the unlawful imposition of filing fees. Count IV prayed for injunctive relief prohibiting charging or collection of the fees.

¶ 6    Defendants moved to dismiss the complaint pursuant to sections 2-615 and 2-619 of the Code. 735 ILCS 5/2-615, 2-619 (West 2014). Defendants argued that (1) the claim was barred by the involuntary payment doctrine, (2) the filing fees were appropriately charged as section 27.2a(g) applies to nonfinal orders, (3) count II should be dismissed on grounds that the Clerks of Courts Act does not provide for a private right of action, and (4) the claim was collaterally stopped. Defendants also argued that although plaintiffs requested attorney fees in all four counts, there was no legal basis for such relief, as a court cannot order the government to pay plaintiffs' attorney fees absent statutory authority or an agreement to create a common fund where a plaintiff advances a legal theory in tort or contract.

¶ 7    On September 15, 2016, the circuit court granted the motion to dismiss under section 2-615 but denied the motion as to section 2-619. Concerning count I, the circuit court rejected plaintiffs' claim that they paid the filing fees under duress because they would have lost the opportunity to contest the rulings of the court unless they paid the fees. The circuit court concluded that plaintiffs failed to adequately plead duress, they did not sufficiently show that they were denied access to a service that was necessary or essential, and plaintiffs were represented by counsel when they paid the fees. With respect to count II, the circuit court held that there was no implied private cause of action under section 27.2a(g) as plaintiffs were not members of the class intended to be benefited by the statute and plaintiffs failed to show that a private right of action was necessary to provide an adequate remedy, as plaintiffs could have simply paid the fees under protest and then pursued their remedies. The circuit court also dismissed counts III and IV as they depended on counts I and II. The court dismissed the consolidated amended class action complaint without prejudice.

¶ 8    Plaintiffs filed a motion to reconsider, which the circuit court denied. Plaintiffs then filed a second amended consolidated class action complaint. Defendants made an oral motion to dismiss. The parties agreed to rely on their prior briefs submitted in defendants' motion to dismiss the amended consolidated class action complaint and plaintiffs' motion to reconsider.

¶ 9    On November 23, 2016, the circuit court granted defendants' motion "on grounds of voluntary payment and other reasons set forth in" the court's September 15, 2016, order, and it dismissed the complaint with prejudice. Plaintiffs timely appealed the circuit court's September 15 and November 23, 2016, orders.

¶ 10                                    II. ANALYSIS
¶ 11                              A. Standard of Review
¶ 12    This court reviews motions to dismiss under section 2-615 of the Code *de novo*. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). The question presented by a section 2-615 motion is "whether the allegations of the complaint, when taken as true and viewed in a light

most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499 (2009). We consider only those facts apparent from the face of the pleadings, matters of which this court may take judicial notice, and judicial admissions in the record. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). Any exhibits attached to the complaint "are considered part of the pleading for every purpose." *Dratewska-Zator v. Rutherford*, 2013 IL App (1st) 122699, ¶ 14. "Mere conclusions of law or facts unsupported by specific factual allegations in a complaint are insufficient to withstand a section 2-615 motion to dismiss." *Ranjha v. BJBP Properties, Inc.*, 2013 IL App (1st) 122155, ¶ 9.

¶ 13    Additionally, this case involves the construction of statutory language, which presents an issue of law we review *de novo*. *People v. Perez*, 2014 IL 115927, ¶ 9. In construing statutory language, this court's "primary objective is to ascertain and give effect to the legislature's intent, keeping in mind that the best and most reliable indicator of that intent is the statutory language itself, given its plain and ordinary meaning." *Id.* We consider a statute as a whole and construe its language in light of other statutory provisions. *Id.*

¶ 14    On appeal, "this court reviews the judgment, not the reasoning, of the trial court, and we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct." *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24.

¶ 15                    B. Section 27.2a(g)

¶ 16    Section 27.2a(g) of the Clerks of Courts Act provides, in pertinent part:

"The fees of the clerks of the circuit court in all counties having a population of 3,000,000 or more inhabitants in the instances described in this Section shall be as provided in this Section. In those instances where a minimum and maximum fee is stated, the clerk of the circuit court must charge the minimum fee listed and may charge up to the maximum fee if the county board has by resolution increased the fee. The fees shall be paid in advance and shall be as follows:

* * *

(g) Petition to Vacate or Modify.

(1) Petition to vacate or modify any final judgment or order of court, except in forcible entry and detainer cases and small claims cases or a petition to reopen an estate, to modify, terminate, or enforce a judgment or order for child or spousal support, or to modify, suspend, or terminate an order for withholding, if filed before 30 days after the entry of the judgment or order, a minimum of $50 and a maximum of $60.

(2) Petition to vacate or modify any final judgment or order of court, except a petition to modify, terminate, or enforce a judgment or order for child or spousal support or to modify, suspend, or terminate an order for withholding, if filed later than 30 days after the entry of the judgment or order, a minimum of $75 and a maximum of $90." 705 ILCS 105/27.2a(g) (West 2014).

¶ 17    On appeal, plaintiffs dispute defendants' contention in the circuit court that section 27.2a(g) authorized the Clerk to charge a fee for filing a motion contesting an interlocutory order. Plaintiffs note that this court recently interpreted this section in accord with plaintiffs'

- 4 -

argument in *Gassman v. Clerk of the Circuit Court*, 2017 IL App (1st) 151738. In *Gassman*, this court held that the word "final" in section 27.2a(g) modifies both of the terms "judgment" and "order" in the statute. *Id.* ¶ 18. Thus, the court held that this court fee statute does not authorize the Clerk to charge a fee to file a petition to vacate a nonfinal order. *Id.*

¶ 18    Defendants concede on appeal that *Gassman* controls here. Defendants do not dispute that the fees paid by plaintiffs to file their motions to reconsider interlocutory orders in the underlying lawsuits were unlawful. As such, we find that the fees for the motions to reconsider interlocutory orders that were charged in the underlying cases here were not authorized under section 27.2a(g).

¶ 19                                    C. Collateral Estoppel

¶ 20    We note that plaintiffs also contend on appeal that the circuit court properly rejected defendants' collateral estoppel argument below. They assert that the circuit court correctly held that the present case is distinguishable from the case relied on below by defendants (*Illinois Department of Healthcare & Family Services v. Ikechukwu*, 2011 IL App (1st) 102650-U (where the defendant challenged amount of fee imposed when he filed a motion to vacate all prior orders in paternity case, court upheld the amount of the fee as some orders were entered in excess of 30 days before motion to vacate was filed and thus the higher fee amount was authorized)). Plaintiffs also contend that this court's decision in *Gassman* would operate against defendants as it addressed the same issue presented here against the same defendants. Defendants concede that their collateral estoppel argument is now of no moment on appeal in light of this court's recent decision in *Gassman*, and they do not advance this argument on appeal. See *Gassman*, 2017 IL App (1st) 151738, ¶¶ 29, 35 (rejecting the Clerk's argument that the plaintiff's suit was barred by *res judicata* because the plaintiff's counsel previously brought two unsuccessful lawsuits challenging the same fee on behalf of different parties, where the court found there was no privity between the plaintiffs). We therefore do not address this issue.

¶ 21                              D. Involuntary Payment Doctrine

¶ 22    Defendants contend that the only issues which remain on appeal are (1) whether the plaintiffs adequately pleaded involuntary payment, *i.e.*, whether the voluntary payment doctrine bars plaintiffs' claims, and (2) whether an implied private right of action exists under section 27.2a(g) of the Clerks of Courts Act. We first address the voluntary payment issue.

¶ 23    Our supreme court long ago recognized that "money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal. It has been deemed necessary not only to show that the claim asserted was unlawful, but also that the payment was not voluntary; that there was some necessity which amounted to compulsion, and payment was made under the influence of such compulsion." *Illinois Glass Co. v. Chicago Telephone Co.*, 234 Ill. 535, 541 (1908) (affirming dismissal of complaint to recover amounts paid for telephone service in excess of legal rates because the amounts were voluntarily paid without fraud or mistake of fact).

¶ 24    Notably, "[t]he kind of duress necessary to establish payment under compulsion has been expanded over the years." *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 848 (1995). " 'The doctrine [has] gradually extended *** to recognize duress of property' " and

" 'extended so as to admit of compulsion of business and circumstances.' " *Id.* (quoting *Illinois Merchants Trust Co. v. Harvey*, 335 Ill. 284, 289 (1929), *overruled in part by Kanter & Eisenberg v. Madison Associates*, 116 Ill. 2d 506 (1987)); see *Getto v. City of Chicago*, 86 Ill. 2d 39, 48-51 (1981) (although the plaintiffs failed to pay under protest an illegal tax on their telephone bills, the threat of telephone service shut off for nonpayment "amounted to compulsion that would forbid application of the voluntary-payment doctrine").

¶ 25    Accordingly, a payment is considered involuntary where "(1) the payor lacked knowledge of the facts upon which to protest the payment at the time of payment, or (2) the payor paid under duress." *Dreyfus v. Ameritech Mobile Communications, Inc.*, 298 Ill. App. 3d 933, 938 (1998) (citing *Getto*, 86 Ill. 2d at 48-49). Duress is generally an issue of fact, but may be decided on a motion to dismiss where the facts are not in dispute. *Smith*, 276 Ill. App. 3d at 850.

¶ 26    Here, as stated, there is no dispute that payment of the fees was unlawful under *Gassman.* In addition, plaintiffs do not dispute that they failed to note any protest on the written instruments with which they paid the fees.[2] Plaintiffs also do not allege that they lacked knowledge of the facts upon which to protest payment of the fees. Instead, they contend that their payment of the filing fees was involuntary and under duress as failure to pay would have denied them access to the courts and the right to a hearing, subjecting them to adverse judgments and their lawyers to legal malpractice claims. To that end, plaintiffs assert that the circuit court erred in concluding that nonpayment would not have resulted in loss of access to necessary goods or services. Plaintiffs urge that the modern trend is against harsh application of the voluntary payment doctrine and a plaintiff need not show that the product or service is a "necessity" in order to establish duress.

¶ 27    Defendants contend that plaintiffs' concept of duress is overbroad and argue that duress requires a showing of fraud or coercion, and the threat of being denied access to the courts is insufficient.

¶ 28    In determining whether payment is made under duress, the main consideration is whether the party had a choice or option, *i.e.*, whether there was "some actual or threatened power wielded over the payor from which he has no immediate relief and from which no adequate opportunity is afforded the payor to effectively resist the demand for payment." *Id.* at 849. Duress may be implied. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 24 (2004); *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797, 802 (2007).

¶ 29    Plaintiffs cite *Keating v. City of Chicago*, 2013 IL App (1st) 112559-U, in support of their assertion that they paid the filing fees under duress. Defendants criticize plaintiffs' reliance on an unpublished order of this court. "[O]ur supreme court restricts parties from citing unpublished orders of Illinois appellate courts" as binding authority, although parties may use "the reasoning and logic that an Illinois appellate court used in its unpublished decision." *Osman v. Ford Motor Co.*, 359 Ill. App. 3d 367, 374 (2005). While plaintiffs acknowledge that *Keating* is nonprecedential, they assert that *Keating* merely followed existing law and relied on published, binding cases. Indeed, the *Keating* court relied on several supreme court and

---

[2]We note that defendants argue on appeal that plaintiffs failed to pay under protest. However, plaintiffs conceded this point and instead argue that while protest is evidence of compulsion, "compulsion may appear from the circumstances without a protest against payment" (*Smith*, 276 Ill. App. 3d at 849), and that they paid under duress.

appellate court cases, namely, *Illinois Glass, Getto, Smith, Norton v. City of Chicago*, 293 Ill. App. 3d 620 (1997), and *Raintree Homes, Inc. v. Village of Long Grove*, 389 Ill. App. 3d 836 (2009).[3] Of these, plaintiffs rely particularly on *Norton* and *Raintree*, which we discuss in turn.

¶ 30    In *Norton*, the plaintiffs challenged a $3 penalty fee they paid on parking fines. *Norton*, 293 Ill. App. 3d at 623. This court found the voluntary payment doctrine did not bar their claims, despite failure to pay under protest, because the demand notices sent by the defendant city were coercive in that they threatened further legal action, entry of a default judgment plus court costs, and action to recover further amounts or demand the maximum fine allowed by law. *Id.* at 627. In addition, the notice directed, without any legal basis, that the plaintiffs were not to contact the traffic court and misinformed them that "[n]o information will be given or payment accepted at" the court. *Id.* The appellate court thus reversed the grant of summary judgment against the plaintiffs. *Id.*

¶ 31    Next, in *Raintree*, the trial court found in favor of the plaintiff developer in its declaratory judgment action challenging a village ordinance that required payment of impact fees as a condition of obtaining building permits. *Raintree Homes*, 389 Ill. App. 3d 836. The appellate court agreed that the developer paid the fees under duress. *Id.* at 866. The majority held that necessity and protest were not the only bases for recoupment; it disagreed with the notion advanced by the dissenting justice that "recoupment of payments made under duress has been either limited to items or services that constitute necessities or allowed only when there has been a protest." *Id.* at 863-64.[4] The court also rejected the argument that recovery was barred because the plaintiff paid the impact fees for years before it sued. *Id.* at 864 (citing *Getto*, 86 Ill.

---

[3]In *Keating*, the plaintiffs received red light violation citations from the City of Chicago and paid their fines. *Keating*, 2013 IL App (1st) 112559-U, ¶ 4. The plaintiffs asserted that the circuit court erred in dismissing their subsequent lawsuit challenging the fines based on the voluntary payment doctrine where the notices of citation from the City of Chicago stated that they could pay or contest the fine, but city ordinances provided that, unless a stay was obtained in court, the fine would become a judgment even if they exhausted their administrative remedies and the city could impose a lien, collection actions would be taken, they would be liable for attorney fees and costs, and could have their vehicles immobilized. *Id.* ¶¶ 69, 71. The court held that the ordinances created "both a threat to the plaintiffs' property (in the form of a judgment lien) and a threat of penalties." *Id.* ¶ 75. The *Keating* court likened the ordinances to the notices at issue in *Norton*, 293 Ill. App. 3d 620, in finding they had a coercive effect.

[4]The *Raintree* court cited *DeBruyn v. Elrod*, 84 Ill. 2d 128, 136 (1981) (duress established where plaintiffs had to pay sheriff's fees or sheriff would refuse to effectuate requested sale), *People ex rel. Carpentier v. Treloar Trucking Co.*, 13 Ill. 2d 596, 600 (1958) (payment for higher classification of truck license plates, without protest, was under duress where Secretary of State refused to file any other classification and economic necessity demanded that trucking company pay for such license plates in order to carry on business and avoid statutory penalties), *Norton*, 293 Ill. App. 3d 620, *Ball v. Village of Streamwood*, 281 Ill. App. 3d 679, 688 (1996) (duress existed despite taxpayers' failure to pay tax under protest where their residences were subject to contracts to sell to third parties and taxpayers would be subject to civil penalties for failure to pay the tax), and *Terra-Nova Investments v. Rosewell*, 235 Ill. App. 3d 330, 337 (1992) (claim not barred by voluntary payment doctrine and duress was shown where certificate of purchase would not have been issued to plaintiff absent payment of the fee).

2d at 51, and *Geary v. Dominick's Finer Foods, Inc.*, 129 Ill. 2d 389, 407 (1989)). It found there was a business compulsion to continue doing business in the village and pay the impact fees because the plaintiff would have gone out of business, breached its contracts with third-party customers, it had "substantial commitments" in land there, and without the permits it could not have legally built homes in the village. *Id.* at 864-65. That the plaintiff's business was profitable did not render the payment of fees voluntary. *Id.* at 865.

¶ 32    We find *Norton* and *Raintree* instructive in the present case. Although plaintiffs here did not pay under protest, it is indisputable that they would have forfeited the ability to challenge the interlocutory orders if they had not paid the filing fee as the Clerk would have refused to accept their motions. We observe that, in attempting to distinguish *Raintree*, defendants rely on the dissenting opinion in that case, which is not binding on this court. Defendants argue that *Norton* is distinguishable because the Clerk here did not make any misrepresentations regarding legal rights or threaten entry of a judgment. However, *Norton* did not hold that a plaintiff must show fraud or coercive misrepresentations. Rather, the court simply followed precedent in holding that a plaintiff could show that a payment was "made under duress or compulsion" if he demonstrated that "the payee exert[s] some actual or threatened power over the payor from which the payor has no immediate relief except by paying." (Internal quotation marks omitted.) *Norton*, 293 Ill. App. 3d at 627. As such, the notices were "coercive enough to render plaintiffs' payment involuntary" where they "discouraged use of the judicial process or coerced payment." *Id.* at 628. Similarly, here, plaintiffs could not avail themselves of the judicial process without payment. Plaintiffs' refusal to pay the fee would have immediately resulted in loss of access to the courts to challenge orders entered against them. This is a more immediate threat than the possibility of a judgment being entered against the plaintiffs in *Norton*.

¶ 33    On appeal, defendant relies primarily on two cases: *Alvarez v. Pappas*, 229 Ill. 2d 217 (2008), and *Wexler*, 211 Ill. 2d 18, neither of which we find persuasive. In *Alvarez*, the plaintiff property owners claimed they were entitled to a refund of real estate taxes where, unbeknownst to the property owners, the taxes were twice paid—by the property owners and their lenders. The issue was whether their requests for a refund were barred by the five-year statute of limitations in the Property Tax Code (35 ILCS 200/20-175 (West 2006)), *i.e.*, whether they constituted "tax payments" which were "overpaid" under the statute. *Alvarez*, 229 Ill. 2d at 221-22. The court held that the payments were for taxes and constituted overpayment for purposes of the five-year limitations statute; the refund claims were thus barred because they were made more than five years after the overpayments. *Id.* at 226.

¶ 34    We find *Alvarez* to be inapposite. The *Alvarez* court noted that the statute of limitations created an exception to the voluntary payment doctrine, which would otherwise bar repayment in that case. *Id.* at 221-22. Voluntary payment and duress were not at issue; rather, the issue was whether the refund requests were barred under the specific statute of limitations.

¶ 35    Defendant also asserts that the circuit court properly relied on *Wexler*, 211 Ill. 2d 18, in ruling against plaintiffs. In *Wexler*, the plaintiff, who purchased liquor as a retail customer at a liquor store, challenged the constitutionality of a statute increasing taxes on manufacturers and importers of alcoholic beverages. *Id.* at 20-21. Our supreme court held that the plaintiff's payment of the taxes was voluntary and not under duress. *Id.* at 23-24. The court held,

> "duress exists where the taxpayer's refusal to pay the tax would result in loss of reasonable access to a good or service considered essential. [Citation.] Goods or

services deemed to be necessities have included telephone and electrical service and, for women, sanitary napkins and tampons. [Citation.]

Alcoholic beverages do not fall within the category of necessary goods or services." *Id.* at 24.

¶ 36 The *Wexler* court concluded that alcoholic beverages were "not essential, in any objective sense, to consumers such as [the plaintiff]." *Id.*; see *Geary*, 129 Ill. 2d at 397-98 (implied duress where the nature of the product—sanitary napkins and tampons—was a necessity and the consequence of nonpayment of the taxes on the product was significant, *i.e.*, the plaintiffs could not obtain the product unless they paid the taxes); *Ross v. City of Geneva*, 71 Ill. 2d 27, 33-34 (1978) (implied duress where the defendant had a policy of terminating electric service if a customer failed to pay their bills, electrical service was a necessity, and there was no reasonable alternative provider of electrical service). The plaintiff was aware of the tax and purchased the alcohol anyway and, in fact, did so in order to establish a basis upon which to bring his legal challenge. *Wexler*, 211 Ill. 2d at 24.

¶ 37 Defendants argue that the payment of the fee to file a motion to challenge an interlocutory order here is more like the purchase of alcoholic beverages in *Wexler* and different from the necessary products or services at issue in the cases *Wexler* discussed, *i.e.*, the sanity napkins and tampons at issue in *Geary*, the electrical service at issue in *Ross*, or the telephone service at issue in *Getto*. However, *Wexler* is readily distinguishable from the present circumstances. Access to the courts to challenge an order entered against a party is an entirely different consideration than the plaintiff's purchase of alcoholic beverages in *Wexler*. And, unlike in *Wexler*, there is no indication that plaintiffs here filed the interlocutory motions and paid the filing fees solely to form a legal basis upon which to challenge the fee statute.

¶ 38 In addition, we are not persuaded by defendants' argument that the approximately $60 fee could not be impliedly coercive because it is a small amount compared to one hour of reasonable attorney fees in the Chicago market. Defendants do not cite to any authority holding that the amount of the unlawful fee is a relevant consideration. Indeed, case law points in the opposite direction. See *Norton*, 293 Ill. App. 3d 620 (finding that a $3 charge was compulsory).

¶ 39 Accordingly, we find that the trial court erred in holding that plaintiffs' claims were insufficient to plead duress and failed to show they were denied access to a service that was necessary to them. Plaintiffs alleged that they paid the fees under duress because nonpayment would have resulted in loss of access to a necessary good or service, *i.e.*, access to the courts to challenge adverse judgments entered against them. At a minimum, the circuit court should not have resolved the issue of duress as a matter of law on the pleadings, as it is generally a question of fact. *Smith*, 276 Ill. App. 3d at 850.

¶ 40 E. Implied Cause of Action Under the Clerks of Courts Act

¶ 41 We next examine whether the circuit court erred in dismissing count II of the complaint upon concluding that no implied private right of action existed under the Clerks of Courts Act.

¶ 42 "When a plaintiff seeks to use a statutory enactment as a predicate for a tort action seeking damages, he must demonstrate that a private right of action is either expressly granted or implied in the statute." *Gassman*, 2017 IL App (1st) 151738, ¶ 25 (citing *Noyola v. Board of*

*Education of the City of Chicago*, 179 Ill. 2d 121, 129-31 (1997)). Our supreme court has outlined a four-part test to determine whether a statute implies a private right of action:

> "(1) the plaintiff belongs to the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for the statute's violation." *Marshall v. County of Cook*, 2016 IL App (1st) 142864, ¶ 12 (citing *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460 (1999), and *Givot v. Orr*, 321 Ill. App. 3d 78, 87 (2001)).

¶ 43     In count II, plaintiffs alleged that defendants violated section 27.2a(g) by imposing and collecting the filing fees and that plaintiffs were overcharged or paid fees they did not owe and suffered monetary damages as a result. Plaintiffs requested a declaration that charging the fees was unlawful and also sought a return of the fees collected pursuant to section 27.2a(g), in addition to attorney fees and other costs. Defendants asserted in their motion to dismiss that count II should be dismissed under *Marshall*, 2016 IL App (1st) 142864, because there is no implied private cause of action for an alleged violation of section 27.2a(g). Defendants argued that plaintiffs have an adequate remedy in the form of a restitution claim. The circuit court agreed.

¶ 44     On appeal, plaintiffs attempt to distinguish *Marshall* in asserting that litigants are the intended beneficiaries of the statute, as demonstrated by statements by a legislator in opposition to a proposal to increase court fees and the Act's detailed categories of fees and maximum amounts that the Clerk may charge. Plaintiff contends that payment of the unlawful fee is the type of injury intended to be prevented, considering the legislature amended the Act to add the adjective "final," and an implied cause of action would be consistent with the underlying purpose of the statute. Plaintiffs dispute that a restitution claim would provide an adequate remedy, as plaintiffs seek damages caused by defendants' imposition of unlawful fees, which includes the amount paid in unlawful fees and their attorney fees and costs.

¶ 45     Defendants maintain on appeal that *Marshall* is controlling. Defendants also assert that plaintiffs are not entitled to attorney fees absent a statutory or contractual basis. Defendants reiterate that plaintiffs have an adequate remedy in the form of a claim for restitution.

¶ 46     In *Marshall*, 2016 IL App (1st) 142864, ¶ 4, the plaintiff asserted that he paid statutory filings fees under different provisions of the Clerks of Courts Act—section 27.3a (to establish record keeping systems) and section 27.3c (for document storage systems) (705 ILCS 105/27.3a, 27.3c (West 2012))—in addition to a fee under section 5-1103 (55 ILCS 5/5-1103 (West 2012)) (to defray costs of court security), but the county allegedly refused to use the fees for the specific purposes set forth in the enabling statutes. The plaintiff requested that the county be compelled to use the fees for their statutory purposes or be returned to him. *Marshall*, 2016 IL App (1st) 142864, ¶ 5. The circuit court granted the county's motion to dismiss, finding no implied private cause of action under the statutes and that the plaintiff lacked standing. *Id.* ¶ 7. On appeal, this court held that the circuit court correctly found no private cause of action existed under the statutes because the plaintiff was "not a member of the class intended to be benefited by the statutes—the statutes are intended to benefit counties that want to reduce court security costs or establish and maintain document storage or automated recordkeeping systems." *Id.* ¶ 13. The *Marshall* court further held that implying a private cause of action was "inconsistent with that underlying purpose and not necessary to provide an

adequate remedy, as the circuit court noted, since the Cook County State's Attorney can bring an action for any alleged violations." *Id.*

¶ 47 The holding in *Marshall* demonstrates that the fees imposed by section 27.2a(g) are intended to compensate for the financial costs of operating the Clerk's office in handling litigants' pleadings and motions. It is not meant to benefit litigants such as plaintiffs. As the *Marshall* court specifically held, the Clerks of Courts Act is intended to "benefit counties that want to reduce court security costs or establish and maintain document storage or automated recordkeeping systems" and a private right of action is inconsistent with this underlying purpose of the Act and not necessary to provide an adequate remedy. *Id.* The same reasoning is applicable here.[5] Thus, we are not persuaded by plaintiffs' arguments that one legislator's comment regarding a proposed fee increase in 1991 demonstrates that the Act was meant to protect litigants as a class. Similarly, we are not persuaded that the fee structure of the Act shows that it was intended to primarily protect litigants and prohibit the Clerk from charging "exorbitant fees for access to the courts" or that plaintiffs' injuries were of the type intended to be prevented by the statute. The fees correspond with different types of filings and the administrative costs associated with each type of filing. *Id.* Implying a private cause of action here is not necessary to effectuate the purpose of the statute.

¶ 48 We also examine whether "implying a private right of action is necessary to provide an adequate remedy for the statute's violation." *Id.* ¶ 12. Plaintiffs complain that equitable relief would not fully compensate them because they are seeking damages—*i.e.*, attorney fees and other expenses costs incurred.

¶ 49 We note that in *Gassman*, the Clerk argued, as it does here, that there was no implied private right of action under section 27.2a(g). *Gassman*, 2017 IL App (1st) 151738, ¶ 24. The plaintiff in *Gassman* sought a writ of *mandamus* to compel the Clerk to cease collecting the unauthorized fees, to return all fees previously collected, and for an accounting of all fees collected. *Id.* ¶ 7. This court held that it was not necessary to infer a private right of action because the plaintiff was not seeking tort-like relief or damages, but instead the plaintiff's suit for *mandamus* was the proper vehicle. *Id.* ¶ 24. The plaintiff was not attempting to impose tort liability on the Clerk, but to compel public officials to comply with the language of the statute, and therefore the plaintiff was "entitled to pursue a *mandamus* action to compel the officials' compliance with the law, and no private right of action is necessary." *Id.* ¶ 25.

---

[5]That the purpose of section 27.2a(g) of the Clerks of Courts Act is intended to benefit the clerks' offices to cover the expenses associated with filing a petition to vacate a final order or judgment is buttressed by other cases examining the purpose behind similar fee provisions in the Clerks of Courts Act. See *Pick v. Pucinski*, 247 Ill. App. 3d 1068, 1073 (1993) (statute requiring payment of a second filing fee after remand had a reasonable basis of compensating clerks for services rendered to case on remand; upheld statutory fee based on purpose related to operating and maintaining court system); *People v. Tolliver*, 363 Ill. App. 3d 94, 97 (2006) (circuit clerks' fee for automation and document storage constituted a fee, and not a fine, as it compensates clerks for costs associated with a defendant's conviction); *People v. Heller*, 2017 IL App (4th) 140658, ¶ 74 (same); *Lee v. Pucinski*, 267 Ill. App. 3d 489 (1994) (statutory fees charged under Clerks of Courts Act for reproduction of records did not violate constitutional right to free access to courts as they constituted charge to compensate clerks for expenses in providing copying services, and statutory fees were reasonably related to statute's purpose of defraying copying expenses).

¶ 50    Indeed, a *mandamus* action is "an extraordinary remedy to enforce the performance of official duties by a public officer where no exercise of discretion on his part is involved." *Wilson v. Quinn*, 2013 IL App (5th) 120337, ¶ 18 (citing *Noyola*, 179 Ill. 2d at 133). See also *Noyola*, 179 Ill. 2d at 124, 132-35 (where the plaintiffs brought suit to force public officials to comply with statutory requirements, and were not using statute as a predicate for tort action, a court may compel public officials' compliance by means of a writ of *mandamus*). We note that the circuit court here ruled on defendants' motion to dismiss in the present case before *Gassman* was decided. To the extent that plaintiffs here are requesting a declaration that imposition of the filing fees is unlawful and seek a return of the fees collected pursuant to section 27.2a(g), plaintiffs' claim can be construed as one for restitution, and not attempting to impose tort liability or damages on the Clerk.

¶ 51    As our supreme court has explained, restitution is available in both cases of law and equity and " '[t]he concepts of restitution and damages are quite distinct, but sometimes courts use the term damages when they mean restitution.' " *Raintree Homes*, *Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 257 (2004) (quoting 1 Dan B. Dobbs, Law of Remedies § 3.1, at 280 (2d ed. 1993)). " 'Damages differs from restitution in that damages is measured by the plaintiff's loss; restitution is measured by the defendant's unjust gain.' " *Id.* (quoting Dobbs, *supra*, at 278). In *Raintree*, the plaintiffs sought a declaration that the ordinance at issue was unlawful and the return of the impact fees collected under the same. *Id.* at 256. The court rejected the defendant's characterization of the plaintiffs' claim as one for "damages," holding instead that plaintiffs sought a refund or restitution of the money they had paid which was not owed. *Id.* at 257. " '[I]f the plaintiff has *no* substantive claim grounded in tort, contract, or statute, then if the plaintiff's claim is viable at all, it *must* be one for restitution to prevent unjust enrichment.' " (Emphases in original.) *Id.* at 258 (quoting Dobbs, *supra* § 4.1(1), at 556). The plaintiffs sought only return of the money paid, not compensation for lost capital which could have been invested elsewhere, and they did not allege that the defendant breached a duty as a predicate for imposing liability. *Id.* at 257.

¶ 52    Here, we find that plaintiffs do not have a basis to pursue a private action to impose tort liability on defendants under *Marshall*, and consequently, they do not have a basis upon which to seek damages to compensate for costs and expenses beyond restitution. However, plaintiffs can proceed with a declaratory action, similar to the *mandamus* action pursued by the plaintiffs in *Gassman*. Much like the *mandamus* action by the plaintiffs in *Gassman*, plaintiffs here need not pursue a private right of action under the Clerks of Courts Act in seeking the equitable relief of a declaratory judgment and return of the fees unlawfully imposed in the form of restitution.

¶ 53    Moreover, to the extent that plaintiffs argue that they are seeking attorney fees, we note that "Illinois has long adhered to the general American rule that the prevailing party in a lawsuit must bear the costs of litigation, unless a statutory provision or an agreement between the parties allows the successful litigant to recover attorney fees and the expenses of suit." *Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 238 (1995) (citing *Saltiel v. Olsen*, 85 Ill. 2d 484, 488 (1981), and *Hamer v. Kirk*, 64 Ill. 2d 434, 437 (1976)).[6] Here, plaintiffs have shown no statutory provision or agreement authorizing such fees.

[6]We note that "where the outcome of the litigation has created a common fund, this court has adopted the 'common fund doctrine.' " *Brundidge*, 168 Ill. 2d at 238. "The general rule requiring

## III. CONCLUSION

We find the circuit court erred in dismissing plaintiffs' count I claim on the basis that it was barred by the voluntary payment doctrine. As to count II, we find that no private right of action is implied in the Clerks of Courts Act. However, plaintiffs may proceed on their declaratory action to prevent the Clerk from charging filing fees under section 27.2a(g) for interlocutory motions and to recover such fees paid by plaintiffs as restitution.

Affirmed in part, reversed in part, and remanded.

---

litigants to bear their own costs and attorney fees does not interfere, however, with the power of courts of equity to permit a litigant or lawyer who recovers a common fund for the benefit of others to recover costs and reasonable fees from the fund as a whole." *Ryan v. City of Chicago*, 274 Ill. App. 3d 913, 921 (1995).