2020 IL App (1st) 190631-U

No. 1-19-0631

Order filed March 17, 2020.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| GIA WELLS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant and Cross-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2017 L 11978 |
| | ) | |
| STATE FARM FIRE AND CASUALTY CO., | ) | The Honorable |
| | ) | James E. Snyder, |
| Defendant-Appellee and Cross-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court properly dismissed the insured's claim that her insurer acted vexatiously and unreasonably in denying coverage where a *bona fide* dispute as to coverage existed. Additionally, the court's inaccurate but superfluous reference to altering a prior order *nunc pro tunc* was without effect.

¶ 2   In May 2016, plaintiff Gia Wells submitted a claim to her insurer, defendant State Farm Fire and Casualty Co. (State Farm), after discovering water in the basement and the second-floor bathroom of her property. Ultimately, State Farm denied coverage and Gia filed a second-

amended, two-count complaint alleging that State Farm (1) breached the insurance contract and (2) acted vexatiously and unreasonably in denying her claim, in violation of the Illinois Insurance Code (the Code) (215 ILCS 5/155 (West 2016)). The circuit court granted State Farm's motion to dismiss Gia's contention under the Code and permitted her to voluntarily dismiss the remaining count.

¶ 3    On appeal, Gia asserts the court erroneously dismissed her claim that State Farm acted vexatiously and unreasonably in denying coverage. State Farm contends on cross-appeal that the court entered an improper *nunc pro tunc* order vacating its prior finding that Gia willfully failed to appear for her deposition. We affirm the court's judgment.

¶ 4                                    I.  Background

¶ 5                                    A. The Policy

¶ 6    Charles Wottrich, Gia's first husband, procured the policy at issue for the house located at 3740 Merioneth Drive in the Village of Crete (property). Coverage A applied to the dwelling while Coverage B applied to personal property. In addition, coverage B covered loss caused by the following:

> "14. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.
>
> This peril does not include loss on the residence premises while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:
>
> >    a.   maintain heat in the building; or
> >
> >    b.   shut off the water supply and drain the system and appliances of water."

Both Coverage A and Coverage B incorporated the exclusions provided in "Section 1-Losses Not Insured," which similarly stated as follows:

"1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below ***:

***

b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

(1) maintain heat in the building; or

(2) shut off the water supply and drain the system and appliances of water."

We note that the policy also contained exclusions for corrosion and vandalism to the dwelling while vacant.

¶ 7    Finally, the policy contained the following condition:

"Concealment or Fraud. This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss."

¶ 8                              B. The Insurance Claim

¶ 9    After Gia reported the flooding to State Farm in May 2016, it hired EFI Global, Inc., (EFI) to assist in the investigation. EFI's initial report, published in January 2017, noted that the

waterline on the basement walls was 73 inches high and it was unclear how often the two-story residence was occupied. The report found that the gas used at the property was inadequate to appropriately heat it and that water froze inside the pipes, causing a pipe failure in the second-floor bathroom. Ultimately, water flowed from there into the basement.

¶ 10 In April 2017, EFI published a report addendum at the direction of State Farm based on the receipt of additional information. Specifically, "the utility-supplied water service to the residence had been discontinued sometime prior to 2017." The addendum determined that "utility-supplied water could not have been the source of the flooding," that the volume of water that could have escaped from the second-floor was insufficient to cause the basement flooding and that it was improbable that the ground water would have caused that extent of flooding. Additionally, EFI concluded that fractures to the piping in the basement caused the basement to flood but that the cause of the fractures could not be determined, in part because of corrosion on the pipes. EFI's addendum did not identify potential causes for the fractures. EFI stated, "[i]t is highly probable that the flooding of the basement resulted in the loss of heating to the residence, which in turn resulted in the freezing in the upstairs piping." After State Farm asked EFI to discuss the candidate causes of the initial piping facture in the basement, EFI published a second addendum in May 2017. EFI identified the potential causes as freezing, corrosion and vandalism.

¶ 11 Meanwhile, on April 19, 2017, Gia submitted to examination under oath. Gia testified that when Charles died in 2006, she continued to use the property as her address but slept at her mother's home. From 2006 to 2012, she went to the property every day. She reduced visits to once or twice a week in 2012. According to Gia, she married Mark Wells on December 9, 2015, and lived full time at his home in Steger, Illinois, but never officially moved in with him. She

kept less of her personal belongings at Mark's house than at her mother's house and kept most of her belongings at the property.

¶ 12    Gia testified that during the first week of January 2016, she and Mark went on their honeymoon to Mexico for 7 to 10 days. The December before the honeymoon, she had stopped by the property to pick up clothing and change the furnace filter. Additionally, the heat was left on an automatic setting. She did not recall going to the property again until May 2016.

¶ 13    At that time, Gia went to the property to clean and prepare for remodeling. In order to transfer from well water to city water, the property was re-piped before Charles died in 2006. As of May 2016, however, Gia had not yet had the walls and floors repaired. When Gia went to the property, she saw that the basement was full of water. After that day, Gia went to the property to pick up her mail once or twice a week but did not always go inside. Mark went to the property more frequently but similarly did not go inside every time.

¶ 14    Gia acknowledged that a lien had been placed on the property at some point for failing to pay a water bill, but she subsequently paid the bill. Additionally, Gia testified that she tried to obtain all of the water bills at State Farm's request but "they," apparently referring to the Village of Crete (Crete), did not have them. Gia testified that she never had the city water turned off, although Crete had turned it off due to nonpayment, and her well water was never disconnected.

¶ 15    On July 10, 2017, State Farm determined that the loss was not covered. According to State Farm, its investigation revealed that the property was unoccupied at the time of the loss and that Gia neither maintained heat nor turned off the water supply and drained the system and appliances. While the precise cause of the piping fracture in the basement could not be determined, EFI identified three candidate causes, all of which would have been excluded under the policy.

¶ 16   State Farm also found Gia violated the concealment and fraud provision with respect to the duration of her travels, the time spent at the property and her ability to obtain information regarding water service to the property. State Farm further noted that while Gia represented that she and Mark married in December 2015, both the marriage certificate and Mark stated that the marriage occurred in December 2014.[1]

¶ 17                                C. The Proceedings

¶ 18   Gia then commenced this action on November 22, 2017, and ultimately filed a second-amended complaint, alleging that State Farm breached the insurance contract and acted vexatiously and unreasonably in denying coverage, in violation of section 155 of the Code. Gia alleged that the State Farm representative who inspected the property in June 2016 noted that she lived there part time and intended to remodel the property to live there full time. Additionally, that representative noted that Gia had been on a honeymoon for the five months preceding her discovery of the loss and observed that personal property was present. Despite this, State Farm improperly determined that the property was unoccupied.

¶ 19   Gia further alleged that in January 2017, several months after the loss was reported, State Farm determined that an expert opinion was necessary. EFI issued an initial report finding that frozen pipes in the upstairs bathroom caused the loss but was directed to make a different determination after State Farm learned that municipal water service had been cut off prior to the loss. EFI then issued an addendum, which concluded that the initial report was erroneous and that fractures had occurred in the basement piping. According to Gia, State Farm, "[d]issatisfied with [EFI's] inability to determine the cause of the fracture of the piping in the basement," then insisted that EFI issue a second addendum identifying the cause of the fractures. EFI's second

---

[1]After this action was filed, Gia admitted that she and Mark were married in December 2014.

addendum stated that EFI could not eliminate corrosion, freezing or vandalism as potential causes. Gia stated that "[d]espite concluding that the claim would be denied in June 2016, [State Farm] did not deny [Gia's] claim until more than one year later."

¶ 20     State Farm filed a combined motion to dismiss (735 ILCS 5/2-619.1 (West 2016)) Gia's contention under section 155 of the Code, arguing that Gia was unable to allege any specific facts to support her conclusion that State Farm's conduct was vexatious and unreasonable. Instead, she provided only a conclusory allegation that State Farm determined her claim would be denied in June 2016. State Farm also argued that its thorough investigation rebutted that conclusion. Additionally, State Farm had legitimate policy defenses based on not only the unoccupied dwelling exclusion but the concealment or fraud condition, as Gia and Mark had made several misrepresentations. At a minimum, a *bona fide* dispute as to coverage existed, precluding judgment in Gia's favor. State Farm's attachments included the policy, EFI's reports, the transcript of Gia's testimony and an affidavit executed by State Farm claims specialist Jacob Thompson.

¶ 21     According to Thompson, Mark stated during an inspection on June 3, 2016, that the property was empty for about five months preceding the loss, and that he and Gia were on an extended vacation from December 2015 to May 2016. Mark later stated in a voicemail message that they left for vacation in November 2015. At an inspection in January 2017, Mark said they had left for vacation on January 4, 2016.

¶ 22     Thompson also alleged that at the June 2016 inspection, Mark said that Crete had turned the water off in their absence upon noticing large usage. Mark also said that Gia could not provide water bills because she paid them in cash. At the January 2017 inspection, Mark added that while Gia had requested that the water be turned off in 2014, the water was not turned off at

that time. He also said they had not been billed for water service since 2014. In contrast, an employee from the water department told Thompson that water was turned off in June 2014 for nonpayment, and that usage between 2006 and 2014 was minimal. The water department employee also said that when Crete notified Gia of low water usage in 2009, she submitted a response explaining that usage was low because she had moved out in 2007.

¶ 23    In response to State Farm's motion, Gia argued that the second-amended complaint showed State Farm feigned a dispute. Yet, Gia did not attach a counter-affidavit to her response.

¶ 24    On February 27, 2019, the circuit court granted State Farm's motion to dismiss because a *bona fide* dispute existed as to coverage. The court found the second-amended complaint's allegation that Gia was living at the property on a part time basis on June 3, 2016, created "a *bona fide* dispute about coverage and whether the dwelling was unoccupied under the policy." Gia moved to voluntarily dismiss the breach of contract count without prejudice the same day.

¶ 25    On February 28, 2019, the circuit court granted Gia's motion to voluntarily dismiss the remaining count, over State Farm's objection, and found that Gia willfully failed to appear for her deposition as required by a previous order. Specifically, the prior order had required Gia to appear by that day. On March 18, 2019, Gia moved to vacate the court's finding of willfulness. She argued that the time to comply with the court's earlier order to appear for a deposition had not yet expired at the time of the court's finding of willfulness. Gia also argued that she offered to appear for her deposition within the time allotted, but State Farm's attorney was unable to conduct the deposition then.

¶ 26    At a hearing on March 28, 2019, State Farm argued that the court lacked jurisdiction to vacate the finding of willfulness because the case was non-suited. State Farm also challenged the facts underlying Gia's motion to vacate. The court nonetheless granted Gia's motion, stating, "I

think there is jurisdiction due to the fact that I'm reinstating the case for that purpose to change that order non [sic] pro tunc to that day." Additionally, the court found "[i]t's just the case that she had until the end of that day to appear for that deposition. They non-suited the case before the end of that day and that's fine." Gia then filed a notice of appeal from the court's dismissal of her claim under section 155 and State Farm filed a notice of cross-appeal from the order vacating the finding of willfulness.

¶ 27                                    II. Analysis

¶ 28                                    A. Dismissal

¶ 29     On appeal, Wells asserts that the circuit court improperly dismissed her claim under section 155 because State Farm lacked a *bona fide* dispute as to coverage and, thus, acted vexatiously and unreasonably in denying coverage. While an abuse of discretion standard ordinarily applies to the review of a circuit court's ruling under section 155, we apply the standard of review appropriate for a grant of judgment on the pleadings where the court has entered such a judgment. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 159-60 (1999). We generally review the circuit court's ruling on a section 2-619.1 motion *de novo*. *Soto v. Great America, LLC*, 2020 IL App (2d) 180911, ¶ 10. Thus, we may affirm the court's judgment on any basis in the record, regardless of the court's reasoning. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 17. We note, however, that the result in this instance would be the same under any standard of review. See *Evergreen Real Estate Services, LLC, v. Hanover Insurance, Co.*, 2019 IL App (1st) 181867, ¶ 35 (acknowledging a split in authority as to whether a ruling under section 155 in the summary judgment context should be reviewed *de novo* or for an abuse of discretion).

¶ 30　A section 2-619.1 motion permits a party to move for dismissal under both section 2-615 and section 2-619. *Garlick v. Bloomingdale Township*, 2018 IL App (2d) 171013, ¶ 24. In reviewing a section 2-615 motion, we consider whether the complaint's allegations, when taken as true and considered in the light most favorable to the plaintiff, are sufficient to state a cause of action. *Midwest Medical Records Ass'n, Inc. v. Brown*, 2018 IL App (1st) 163230, ¶ 12. We can also consider matters subject to judicial notice, judicial admissions in the record and exhibits attached to the complaint. *Id*. In contrast, legal or factual conclusions, unsupported by specific factual allegations, will not withstand a section 2-615 motion. *Id*.

¶ 31　A motion to dismiss under section 2-619 admits a claim's legal sufficiency while raising defenses, defects or other affirmative matters that appear outside the face of the complaint. *Garlick*, 2018 IL App (2d) 171013, ¶ 24. A section 2-619 motion admits as true not only all well-pleaded facts but all reasonable inferences to be gleaned from the facts. *Cooney v. Rossiter*, 2012 IL 113227, ¶ 17. Additionally, section 2-619 permits a movant to provide an affidavit supporting the motion if grounds for dismissal do not appear on the face of the motion, provided that the affidavit does not challenge the complaint's allegations. *King v. City of Chicago*, 324 Ill. App. 3d 856, 859 (2001). "When supporting affidavits have not been challenged or contradicted by counter-affidavits or other appropriate means, the facts stated therein are deemed admitted." *Zadella v. Gibson*, 165 Ill. 2d 181, 185 (1995). In considering a section 2-619 motion to dismiss, we must view the pleadings and supporting materials in the light most favorable to the nonmovant. *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 50.

¶ 32　Section 155 of the Code states as follows:

> "In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable

thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is *vexatious and unreasonable*, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts[.]" (Emphasis added.) 215 ILCS 5/155 (West 2016).

To state a claim under section 155, the insured must provide a modicum of factual support; she cannot merely allege that the insurer acted vexatiously and unreasonably. *Cook ex rel. Cook v. AAA Life Insurance Co.*, 2014 IL App (1st) 123700, ¶ 49.

¶ 33    Generally, no single factor is dispositive in determining whether an insurer's conduct was vexatious or unreasonable. *Id.* ¶ 48. Relevant factors include the insurer's attitude, whether the insured was forced to file suit, whether she was deprived of the use of her property, the extent of the insurer's investigation and the sufficiency of communications between the insurer and the insured. *Id.* That being said, section 155 cannot be invoked for an insurer's assertion of a legitimate policy defense or its denial of coverage based on a policy's express wording. S*cudella v. Illinois Farmers Insurance Co.*, 174 Ill. App. 3d 245, 253 (1988). Furthermore, an insurer has not acted vexatiously or unreasonably where it reasonably relied on evidence sufficient to create a *bona fide* dispute. *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481, ¶ 32. "*[B]ona fide*" means genuine, actual, real and not feigned. *Cook ex rel. Cook*, 2014 IL App (1st) 123700, ¶ 49; see also *Rogers Cartage Co. v. Travelers Indemnity Co.*, 2018 IL App (5th) 160098, ¶ 97 (stating that "an insurer may not overcome section 155 damages by cloaking its bad faith under the guise of a *bona fide* dispute").

¶ 34    We find the second-amended complaint's allegations were insufficient to establish that State Farm acted vexatiously and unreasonably, as required to survive section 2-615. Gia alleged

that "[o]n June 3, 2016, [State Farm] noted that Gia had been on an extended honeymoon for approximately five months prior to discovering the Loss." She also alleged that on the same date, State Farm noted that Gia had been living at the property part time prior to the loss. As Gia acknowledges, the policy did not define what it means for the property to be unoccupied. Given Gia's limited use of the property, a *bona fide* dispute existed as to whether the property was unoccupied at the time of the loss. Gia's alleged intention to remodel the property and live there full time in the future did not mean that she occupied the property at the time of the loss. Moreover, State Farm's observation of personal property would not alone show that she occupied the property. We further note that while the policy required Gia to maintain heat in the building or "shut off the water supply *and* drain the system and appliances of water" (emphasis added), Gia's pleading did not specifically allege that she had taken such measures.

¶ 35 Gia's remaining allegations do not show unreasonable or vexatious conduct either. Gia alleged that after State Farm learned municipal water service had been turned off, State Farm asked EFI to revisit its initial determination that frozen pipes in an upstairs bathroom caused the flooding. This was entirely consistent with State Farm's objective of determining what actually caused the loss. While Gia alleged that "[State Farm] insisted that [EFI] issue another addendum opining as to the cause of the fracture in the piping in the basement," Gia did not specifically allege that State Farm ordered EFI to reach any particular determination. Thus, State Farm's request would have been redundant at best. Furthermore, Gia alleged that State Farm did not hire experts to investigate until six months after she reported the loss. She did not deny, however, that State Farm pursued other lines of investigation, such as interviewing Gia and Mark or examining the property. *Cf. Buais v. Safeway Insurance Co.*, 275 Ill. App. 3d 587, 592-93 (1995) (reversing the circuit court's dismissal under section 2-615 of the plaintiff's section 155 claim where, taking

the factual allegations and reasonable inferences therefrom as true, the policyholder claimed that the insurer refused to evaluate, investigate or discuss a claim when there was no *bona fide* dispute about coverage).

¶ 36     The second-amended complaint also contained factual conclusions that were insufficient to survive a section 2-615 motion. Gia alleged that State farm was "[dissatisfied] with [EFI's] inability to determine the cause of the fracture of the piping in the basement." Additionally, "[a]s of June 2016, [State Farm] determined that [Gia's] claim would be denied due to [State Farm's] conclusion that the Dwelling was unoccupied." She also alleged that "[State Farm] never intended to pay [Gia's] claim." Furthermore, Gia alleged that State Farm required Gia to produce financial records and submit to an examination under oath solely to support its prior decision to deny her claim. Yet, none of these allegations purport to be based on any particular statement of State Farm or any other source. Such conclusions, unsupported by specific factual allegations, are insufficient to satisfy section 2-615. *Midwest Medical Records Ass'n, Inc.*, 2018 IL App (1st) 163230, ¶ 12. Construing the allegations in the light most favorable to Gia, the second-amended complaint did not allege conduct that was vexatious and unreasonable.

¶ 37     The circuit court properly dismissed the claim under section 2-619 as well. State Farm attached Thompson's affidavit to its motion. Because Gia provided no counter-affidavit, Gia has admitted the facts stated therein. See *Zadella*, 165 Ill. 2d at 185. Additionally, Thompson's affidavit, Gia's testimony and EFI's reports show that a *bona fide* dispute existed as to whether coverage was negated by the unoccupied dwelling exclusion and the concealment or fraud condition. We note that Gia's brief fails to even acknowledge that State Farm raised the concealment or fraud condition as a basis to deny coverage.

¶ 38    Gia testified that after Charles died, she stopped sleeping at the property and, by 2012, went there only once or twice a week. She testified that she eventually lived with Mark "full time" in Steger, although she apparently kept few belongings there. She did not recall going to the property between December 2015 and May 2016. *Cf. Lundquist v. Allstate Insurance Co.*, 314 Ill. App. 3d 240, 246-247 (2000) (finding a question of fact as to whether the home was "occupied" where the insureds were present on several occasions during the 60 days preceding the fire, where an insured stayed overnight at least once during that period). Additionally, Thompson learned that Gia told Crete that she had moved out in 2007. See *Thompson v. Green Garden Mutual Insurance Co.*, 261 Ill. App. 3d 286, 291 (1994) (stating that "unoccupied," or the phrase "vacant or unoccupied," in the context of a coverage exclusion means "that no one was living in the dwelling or had actual use or possession of the dwelling at the time of loss"); *Lundquist*, 314 Ill. App. 3d at 245 (quoting 44 Am. Jur. 2d *Insurance* § 1220 (1982)) (stating that "[a] house is unoccupied when 'it has ceased to be a customary place of habitation or abode, and no one is living or residing in it'"). This created a *bona fide* dispute as to whether the property was occupied. Moreover, Gia testified that the heat was on an automatic setting but she did not specify the temperature it was set to. Mark similarly told Thompson that the heat was left on in their absence, but he did not recall what temperature the thermostat was set at. EFI further reported that an inadequate amount of gas was used to properly heat the property. Even when reviewed in the light most favorable to Gia, the items attached to the motion to dismiss show a *bona fide* dispute existed as to whether the unoccupied dwelling exclusion applied.

¶ 39    As to the fraud or concealment condition, it was clearly material, in light of the unoccupied dwelling exclusion, whether anyone was actually living at the property and whether

the water supply had been turned off. Yet, Gia and Mark provided State Farm with inconsistent information in this regard. According to Thompson, Mark stated at various times that he and Gia were on vacation from either November 2015, December 2015 or January 2016, to May 2016. This stands in direct contrast to Gia's testimony that they were on vacation for only 7 to 10 days. Additionally, Mark told Thompson that Crete turned the water off in 2016 upon noticing large usage. Thompson learned from Crete, however, that water usage had been low since 2006 and that water to the property was turned off for nonpayment in June 2014. Mark later said that Gia had asked Crete to turn the water off in 2014, but that Crete had not done so. Yet, Gia testified that she never had the water shut off.[2] Furthermore, Mark provided varying accounts of why Gia could not provide water invoices. He said they were unavailable because Gia paid in cash, because Crete did not have the invoices and because Crete had not invoiced them since 2014. No insurer would overlook such inconsistencies.

¶ 40    In light of the foregoing, a *bona fide* coverage dispute existed. See *Illinois Founders Insurance Co.*, 2015 IL App (1st) 122481, ¶¶ 33-34 (finding it unnecessary for "every scintilla of evidence" to point against coverage or for the evidence of a defense to be "overwhelming or conclusive"); *cf. Cook ex rel. Cook*, 2014 IL App (1st) 123700, ¶¶ 46, 48 (stating where the plaintiff's section 155 claim proceeded to a bench trial that "[w]hether a delay is vexatious and unreasonable is a question of fact that must be assessed based on the totality of the circumstances, taken in broad focus"). The circuit court properly dismissed Gia's claim pursuant to section 155 of the Code.

¶ 41                                B. Post-Judgment Order

---

[2]Notably, Gia states in her appellant's brief, without citation to the record, that "municipal records indicated that the plaintiff had shut off the water before her vacation."

¶ 42    On cross-appeal, State Farm asserts that the circuit court improperly used a *nunc pro tunc* order to alter its prior determination that Gia willfully violated a discovery order. We find that while the court referred to the order as being entered *nunc pro tunc*, the order neither qualified as a *nunc pro tunc* order nor needed to qualify as one.

¶ 43    A circuit court generally loses jurisdiction to modify a judgment 30 days after its entry. *Beck v. Stepp*, 144 Ill. 2d 232, 238 (1991) (abrogated on other grounds by *Kingbrook, Inc. v. Pupurs*, 202 Ill. 2d 24, 30-33 (2002)). A court may modify its judgment *nunc pro tunc* at any time, however, to correct a clerical error so that the record conforms to the judgment actually rendered. *Beck*, 144 Ill. 2d at 238. Thus, a *nunc pro tunc* order may be useful when the court has lost jurisdiction. We review *de novo* whether an order satisfies the criteria for a *nunc pro tunc* order. *People v. Jones*, 2016 IL App (1st) 142582, ¶ 12.

¶ 44    A *nunc pro tunc* order is intended to make the record reflect what was actually done before. *Harreld v. Butler*, 2014 IL App (2d) 131065, ¶ 13. More specifically, a *nunc pro tunc* amendment may only reflect things that the court actually did before but were omitted from the earlier order due to a clerical error. *Jones*, 2016 IL App (1st) 142582, ¶ 11. Conversely, a *nunc pro tunc* order cannot be used to "correct a judicial error under the pretense of correcting a clerical error." *Harreld*, 2014 IL App (2d) 131065, ¶ 13. A *nunc pro tunc* order does not alter or reverse the actual judgment. *Deutsche Bank National Trust Co. v. Ivicic*, 2015 IL (2d) 140970, ¶¶ 17, 19.

¶ 45    On February 28, 2019, the circuit court found that Gia willfully failed to appear for her deposition, in violation of the court's discovery order. Less than 30 days later, while the court still had jurisdiction, Gia moved to vacate that finding. The court also granted that motion within 30 days. The court indisputably had jurisdiction to do so. Although State Farm argued in the

circuit court that the voluntary dismissal of the breach of contract count left the court without jurisdiction, State Farm has failed to develop an argument to that effect on appeal. *Cf. Beck*, 144 Ill. 2d at 235, 242 (finding where the circuit court improperly purported to modify an order *nunc pro tunc* as to a judgment rendered four months earlier, the modification was void).

¶ 46    At the hearing on Gia's motion, the court determined that its prior order, determining that Gia willfully and wantonly violated an even earlier discovery order, was incorrect and granted Gia's motion to vacate. State Farm has developed no argument regarding the merits of that determination. In addition, we agree with State Farm's contention that the court was wrong to say it was changing the order *nunc pro tunc*, as the court was clearly altering the actual judgment previously entered by the court. That being said, the court's characterization of the order as *nunc pro tunc* was superfluous, as the court had jurisdiction. We find no error. See also *Deutsche Bank National Trust Co.*, 2015 IL (2d) 140970, ¶¶ 22-23 (After determining that the circuit court could not alter the judgment *nunc pro tunc*, the reviewing court considered whether the court could merely reconsider the prior judgment.).

¶ 47                                    III. Conclusion

¶ 48    Here, the pleadings unambiguously showed that a *bona fide* dispute existed as to coverage and that State Farm did not act vexatiously and unreasonably in denying coverage. Thus, the circuit court properly dismissed Gia's claim under section 155 of the Code. While the post-judgment order could not be entered *nunc pro tunc*, it did not need to be.

¶ 49    For the foregoing reasons, we affirm the circuit court's judgment.

¶ 50    Affirmed.